# Richmond

## CITY OF RICHMOND v. WILLIAM E. HANES.

November 27, 1961.

Record No. 5298.

Present, All the Justices.

*James A. Eichner* (*J. E. Drinard*, on brief), for the plaintiff in error.

*Frank C. Maloney, III* (*George E. Allen; Wilbur C. Allen; Allen, Allen, Allen & Allen*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

This case involves the question of whether the city of Richmond is entitled to share in a sum paid into court as damages for personal injuries suffered by William E. Hanes, the appellee.

Hanes had been in the employ of the city as a police officer for eighteen years. On May 1, 1959, while on duty directing traffic on one of the city streets, he was struck and seriously and permanently injured by an automobile being negligently operated by one Roy D. Thompson. He was hospitalized for nearly three months and shortly after August 1, 1959, he employed attorneys for the purpose of recovering damages for his injuries and agreed with them that their fee would be one-third of the amount recovered.

The city of Richmond asserted a claim against Thompson and his insurance carrier for hospital and medical expenses paid by it for Hanes, and wages paid to Hanes during his disability. After some negotiations and correspondence between the city and Hanes' attorneys, the attorneys brought an action on November 10, 1959, for damages against Thompson, who filed his grounds of defense. A settlement of the action was later agreed on in the sum of $25,000, the maximum amount of Thompson's insurance. A disagreement arose between the attorneys and counsel for the city as to the division of this fund, primarily as to the attorneys' fee, its amount and how it should be paid. What seemed originally to be a spirit of accommodation with respect to the controversy developed into a fixed disagreement.

Pursuant to § 8-226 of the Code, Thompson, the defendant, paid the $25,000 into court and the court, by order of May 3, 1960, directed the city to appear and state the nature of its claim. The city accordingly filed a petition alleging that Hanes, as a police officer, was subject to the personnel rules of the city and that § 154 of these rules, adopted pursuant to § 9.06 of its charter, provided that payment by the city of medical expenses, hospital expenses, injury leave and Workmen's Compensation "to or on behalf of any employee injured or killed in the line of duty by any act or omission of another shall constitute an assignment to the City of any right to recover damages," and that the city should be reimbursed to the extent of such payments; that the city had paid to or for Hanes $11,307.12 for hospital and medical expenses, and $1,969.83 as injury leave in full of his wages from the time of his injury to the date of his retirement, a total of $13,276.95; that said payments were accepted by or made with the consent of Hanes; that the city claimed to be entitled to reimbursement for said amount, with priority over claims for attorneys' fees or other claims. It prayed that payment be made to it accordingly out of the fund and that the court determine a reasonable fee to be paid out of the fund to Hanes' attorneys.

By order of May 16, 1960, filing the petition, the city was made a party defendant and the plaintiff, Hanes, was directed to reply. Thompson, the original defendant, was discharged from further liability to Hanes or to the city.

Hanes, in his reply, admitted that he was subject to the personnel rules of the city, but denied that said rules constituted any assignment of any part of his claim for personal injuries. He denied that Rule 154 created any assignment of any part of the subject matter of his action. He admitted that the city had paid the amount claimed on account of doctors and hospital bills, but denied that they were paid for or on his behalf, or that they were accepted by him or made with his consent. He asserted that they were paid by the city "pursuant to its own obligations". He denied that the city was entitled to reimbursement from the fund in the sum of $13,276.95, or any other amount, or to any priority. He prayed that the entire fund be paid to him and his attorneys.

The court then heard the evidence offered by the parties, which, except for exhibits of accounts and documents, related almost entirely to the attorneys' fees. At its conclusion the court rendered its opinion that Hanes' action for tort was not assignable and that the personnel board of the city had no stautory power to create such an assignment,

and that no subrogation in favor of the city had arisen under the circumstances of the case beyond $700 provided for by § 32-138 *ff.* of the Code. That sum was ordered paid to the city, the balance paid to Hanes and his attorneys, and the petition of the city was dismissed, but without prejudice to its right "to assert such claim in an action not based upon assignment or subrogation."

Under its assignments of error the city contends that the court erred in holding: (1) That Hanes' cause of action against Thompson, or the proceeds from the settlement of that cause, was not assignable to the extent of the payments made by the city for injury leave and hospital and medical expenses, even in the absence of statutory authority for such assignment; (2) That Rule 154 was ineffective to make such assignment; and (3) That the city was not subrogated to Hanes' cause of action or the proceeds from the settlement of it to the extent of said payments. We deal with the questions in that order.

I. It is not contended that there was any express assignment by Hanes of his cause of action. There were, of course, no proceeds to assign until the money was paid into court. The city's present contention is that Hanes acquiesced in the payment of his wages and medical expenses with constructive and actual knowledge of the assignment provision of the personnel rules, and if his right to recover damages was capable of being assigned, his conduct was sufficient to constitute a valid assignment.

There is no evidence that Hanes intended to assign his cause of action to the city or that he had any actual knowledge of the assignment provision of the personnel rules until a letter was delivered to him on August 20, 1959, by the city's acting chief of police, reciting the assignment provision of the personnel rules and directing him to reimburse the city "for all bills as well as time losses" in connection with his accident. This was more than three weeks after Hanes had been discharged from the hospital and most of the bills had been paid. It is not shown that Hanes knew what bills had then been paid or what were afterwards paid. This personnel rule was adopted in 1958, long after Hanes began his service as a police officer, and there is no evidence that he consented to it or had any actual knowledge of it.

If it be conceded that circumstances existed sufficient to constitute an assignment, that alone does not support the city's claim. Hanes' cause of action against Thompson for bodily injuries, which was the basis of the fund paid into court, was not assignable by him in the absence of a statute permitting such assignment.

"The general doctrine, both at law and in equity, is that rights of action for torts causing injuries which are strictly personal and which do not survive are not capable of being assigned, although a right to damages arising ex delicto is recognized as being a chose in action. * *." 4 Am. Jur., Assignments, § 30, p. 252. Anno., 40 A.L.R. 2d 500, 502; Burks Pl. & Pr., 4 ed., § 234 (1), p. 405. The rule was based on principles of public policy to discourage champerty and maintenance. 4 Am. Jur., *id.*, § 22, p. 247.

In *Winston* v. *Gordon*, 115 Va. 899, 915-6, 80 S. E. 756, 763, decided in 1914, this court approved the rule as thus stated in Graves on Pleading, p. 16:

"* * 'But all actions *ex delicto* are not assignable, even in equity, for it is sometimes considered against public policy, even in our day, to allow such an action to be made over to an assignee for money. Then what tort actions are assignable? The answer is such only as survive to or against the personal representative, if one of the original parties dies. Then what tort actions survive? The answer is: Those for wrong to property, real or personal, or which grow out of breach of contract, but not for wrongs done to the person or reputation, or any purely personal wrong, apart from property or contract. * *.' "

That case has been cited many times without any modification of the quoted statement. See *Watson* v. *Daniel*, 165 Va. 564, 568, 183 S. E. 183, 185; *Progressive Realty Corp.* v. *Meador*, 197 Va. 807, 809, 91 S. E. 2d 645, 647; *Worrie* v. *Boze*, 198 Va. 533, 536, 95 S. E. 2d 192, 195; *Carva Food Corp.* v. *Dawley*, 202 Va. 543, 546, 118 S. E. 2d 664, 667.

■ The rule that actions for purely personal wrongs are not assignable has not been changed by statute.

Acts of Assembly, 1950, ch. 481, p. 948, added to the Code § 8-628.1 providing that no cause of action for injuries to person or property shall be lost because of the death of either the injured or the injuring. It was amended by Acts, 1952, ch. 378, p. 671, to provide that no such action for personal injuries, except of a person under disability at the time of the injury, shall be brought more than one year after the injuries occurred. It was amended again by Acts, 1954, ch. 607, p. 782, to increase the limitation period to two years and to provide that nothing in the section as amended should be construed to extend the time for bringing action for any other tort "nor to give the right to assign a claim for a tort not otherwise assignable."

The 1954 Act repealed § 8-628 of the 1950 Code which had contained a like provision that "Nothing contained in this section shall be

construed to extend the time within which an action for any other tort shall be brought, nor to give the right to assign a claim for a tort not otherwise assignable." The quoted language was part of § 5790 of the 1919 Code and was discussed at length in *In Re Funk*, 2 F. Supp. 555, 560, by the late Judge McDowell, who reached the conclusion that it "does not imply that either rights of action or actions for tortious bodily injury have assignability." The Court of Appeals thought that to be the correct conclusion but affirmed the case on another ground. *Ruebush* v. *Funk*, (4 Cir.), 63 F. 2d 170. *Cf. Herndon* v. *Wickham*, 198 Va. 824, 97 S. E. 2d 5.

While the phrase "a tort not otherwise assignable" in present § 8-628.1 has been criticized as lacking clarity, we think it is clearly sufficient to express a definite legislative intent that the survival rights given by the statute shall not be construed to give assignability to a claim for a tort which was not assignable prior to the statute. *Cf.* Note, 41 Va. Law Rev., p. 687. Accordingly we hold that Hanes' claim against Thompson for his bodily injuries was not assignable by Hanes either at common law or by virtue of the statute.

II. The city asserts, nevertheless, that its personnel board had power to adopt § 154 of the personnel rules providing that the payments so made by it constituted an assignment to the city of Hanes' right to recover damages. It relies essentially on § 9.06 of its charter, Acts 1948, ch. 116, p. 175, as the source of that power. Section 9.05 (p. 225), Acts 1948, gave the personnel board power to adopt and amend rules to give effect to the provisions of Chapter 9, "Department of Personnel", of the charter. The pertinent part of § 9.06 (p. 226) appears in the margin.[1]

Obviously this section of the charter gave the personnel board no express authority to adopt § 154 of its rules, and if it had such authority it was by implication alone.

"If the [asserted] power has not been expressly granted, or is not

---

[1] " * * The rules and amendments thereof so adopted shall have, to the extent that they are consistent with the terms of this charter, the force of law. Among other things they shall provide for the method of holding competitive examinations; the method of certifying eligibles for appointment; the establishment, maintenance, consolidation and cancellation of eligible lists; the administration of the classification plan and pay plan; methods of promotion and the application of service ratings thereto; probationary periods of employment; transfers of employees within the classification plan; hours of work, vacations, sick leaves and other leaves of absence; overtime pay; the order and manner in which layoffs shall be effected; procedure on appeals from orders of suspension or removal or other disciplinary action; and such other matters as may be necessarry to provide adequate and systematic handling of the personnel affairs of the city."

necessarily implied, it does not exist. If it be even doubtful, the doubt must be resolved against the existence of the power." *Winchester* v. *Redmond*, 93 Va. 711, 717, 25 S. E. 1001, 1003.

It is firmly settled that a municipality has only the powers (1) granted in express words; (2) necessarily or fairly implied in, or incidental to, the powers expressly granted; (3) essential to its declared objects and purposes, not simply convenient but indispensable. *City of Richmond* v. *County Board*, 199 Va. 679, 684, 101 S. E. 2d 641, 645; 13 Mich. Jur., Municipal Corporations, § 25.

We agree with the trial court that the implied powers of the personnel board do not extend to the adoption of a rule abrogating the ancient rule that tort claims based on bodily injury are not assignable.

■ III. Finally the city contends that it was subrogated to Hanes' cause of action to the extent of the payments made by it. It asserts that it is entitled both to conventional subrogation arising from express or implied agreement, and to legal subrogation arising by operation of law. *Federal Land Bank* v. *Joynes*, 179 Va. 394, 401, 18 S. E. 2d 917; 18 Mich. Jur., Subrogation, § 2, pp. 3-4; 83 C.J.S., Subrogation, §3, p. 583, § 4, p. 586.

Not everybody, of course, who pays the debts of another is entitled to be subrogated to the rights of the creditor. If he does so voluntarily out of a spirit of generosity, a feeling of moral responsibility or a sense of duty, that alone does not entitle him to compel repayment by the debtor, particularly out of a chose in action which was not assignable to him, as in this case.

In *Morgan* v. *Gollehon*, 153 Va. 246, 249, 149 S. E. 485, 486, it was said, citing Pomeroy's Equity Jurisprudence, 2d ed., § 2343, that persons entitled to subrogation may be divided into three classes: (1) Those who act in the performance of a legal duty arising either by express agreement or by operation of law, as in the case of a surety who pays his principal's debt; (2) those not legally bound to pay, but who might suffer loss if the obligation is discharged, and who act under the necessity of self-protection; and (3) strangers who act at the request of a person liable for the debt. See 83 C.J.S., Subrogation, § 38 p. 649 *ff*.

Here there is no showing that the city acted in the performance of a legal duty or occupied the position of a surety; or that it acted in self-protection against a loss it might suffer if it did not pay; or that it acted in response to a request of Hanes.

On the contrary, the injury leave payment was optional under the city's personnel rules and was paid without any suggestion that it

should be refunded. There is no evidence that Hanes had anything to do with selecting the medical or hospital services for which the city paid; or that he knew what the charges were or ever saw any of the bills paid by the city. He made no request to the city to pay these bills nor any promise at any time to refund the amount so paid. It was not until after the obligation had been incurred and Hanes had been released from the hospital that Hanes was informed that the city expected him to refund these payments, and then it relied on the assignment provision of § 154 of the personnel rules as the basis of its claim. In its petition asserting its claim against the fund paid into court it alleged as its basis only that Hanes' cause of action had been assigned to it by virtue of the personnel rule.

Moreover, in the absence of statutory authority, the city should not be subrogated to a chose in action which could not be assigned to it.

It was so held in *Fifield Manor* v. *Finston*, 54 Cal. 2d 632, 354 P. 2d 1073. The California statute, like our § 8-628.1, provided for the survival of personal injury causes of action but also provided that nothing in the statute should be construed to make the cause of action assignable. Accordingly the court refused to apply the principles of subrogation in favor of an insurer who had been required to pay the medical expenses of its insured who was negligently injured by a third party, even though the insurance contract expressly granted a right of subrogation. The court said:

"While subrogation and assignment have certain technical differences, each operates to transfer from one person to another a cause of action against a third, and the reasons of policy which make certain causes of action nonassignable would seem to operate as forcefully against the transfer of such causes of action by subrogation. * *." 54 Cal. 2d at 640, 354 P. 2d at 1078.

The trial court properly limited the city's right in the fund to the lien granted by § 32-138 of the Code and to which municipalities are specifically subrogated by § 32-140.

The judgment appealed from is therefore

*Affirmed.*