# Richmond

GERALDINE SIMMONS COLLINS v. BLUE CROSS OF VIRGINIA AND BLUE
SHIELD OF VIRGINIA.

BLUE CROSS OF VIRGINIA AND BLUE SHIELD OF VIRGINIA v. GERALDINE
SIMMONS COLLINS.

January 15. 1973.

Record Nos. 7958 and 7959.

Present, Snead, C.J., I'Anson, Harrison, Cochran, Harman and Poff, JJ.

*E. Brodnax Haskins,* for plaintiff in error in Record No. 7958.

*Henry H. McVey, III (McGuire, Woods & Battle,* on brief), for
defendants in error in Record No. 7958.

*Henry H. McVey, III (McGuire, Woods & Battle,* on brief), for
plaintiffs in error in Record No. 7959.

*E. Brodnax Haskins*, for defendant in error in Record No. 7959.

COCHRAN, J., delivered the opinion of the court.

The question for determination in these appeals is whether Blue Cross of Virginia and Blue Shield of Virginia may recover from Geraldine Simmons Collins, a participant under a group contract, sums expended by Blue Cross for hospital services and by Blue Shield for medical services for which she has been paid by a third-party tortfeasor.

On May 19, 1969, Mrs. Collins, an employee of E. I. duPont deNemours and Company, Incorporated, was injured in an automobile accident. Pursuant to their contract with duPont covering its employees, Blue Cross-Blue Shield paid in behalf of Mrs. Collins $1,775 for hospitalization expenses and three bills of doctors for $363, $375, and $71, respectively, or a total of $2,584.

Mrs. Collins brought an action in the Law and Equity Court of the City of Richmond against third-party tortfeasors. Blue Cross-Blue Shield notified all counsel that they asserted a claim and lien against any payments made to Mrs. Collins to the extent of their expenditures for her under their contract. Mrs. Collins recovered $7,000 of which $2,584, by agreement, is being held in escrow pending a determination of the Blue Cross-Blue Shield claim.

Relying upon the subrogation provision[1] in the group contract Blue Cross-Blue Shield initiated this action against Mrs. Collins to recover their payments made for her benefit. The matter was submitted on a stipulation of facts for determination by the trial court, without the intervention of a jury. The trial court held that Blue Cross-Blue Shield could not recover under the subrogation provision but that they were entitled to the liens provided by Code § 32-138, *et seq.*[2] in the aggregate amount of $771, less an attorney fee of

---

[1] "ARTICLE XI—SUBROGATION

"A. In the event of any payment for services under this Contract, the Associations shall, to the extent of such payment, be subrogated to all rights of recovery of the Participant receiving such services against any person or organization, except against insurers on policies of insurance issued to and in the name of the Participant, and the Participant shall execute and deliver such instruments as may be required to do whatever else is necessary to secure such rights to the Associations."

[2] "Code § 32-138. Lien against person whose negligence causes injury.—Whenever any person sustains personal injuries caused by the alleged negligence of another and receives treatment in any hospital, public or private, or receives medical attention or treatment from any physician, or receives nursing service or care from any registered nurse in this State, such hospital, physician or nurse shall

$257 payable to counsel for Mrs. Collins. We granted Blue Cross-Blue Shield and Mrs. Collins writs of error to the judgment order entered July 23, 1971.

Blue Cross-Blue Shield have assigned error to the action of the trial court in holding the subrogation provision invalid and in subjecting the amount of their statutory liens to a fee payable to Mrs. Collins's attorney. Mrs. Collins has assigned cross-error to the ruling of the trial court that Blue Cross-Blue Shield had perfected their statutory liens.

Mrs. Collins contends that *City of Richmond* v. *Hanes*, 203 Va. 102, 122 S.E.2d 895 (1961), held to be controlling by the trial court, requires affirmance on the question of subrogation. We do not agree.

Subrogation is a device of equity designed to obtain an equitable adjustment between the parties by securing the ultimate discharge of a debt by the person who in equity ought to pay it. Subrogation implies restoration of the amount paid by a surety or one secondarily liable and prevention of unjust enrichment. 16 Couch, *Cyclopedia of Ins. Law* § 61:18 (2d ed. 1964).

There are two types of subrogation, legal, arising by operation of law, and conventional, arising from contract. *Federal Land Bank* v. *Joynes*, 179 Va. 394, 401-02, 18 S.E.2d 917, 920 (1942). Here we are concerned with conventional subrogation.

The nature of the Blue Cross-Blue Shield contract is indemnification. In the event of accident or illness requiring hospitalization, Blue Cross-Blue Shield agreed to make a participant whole on hospital and medical expenses up to the limits of the policy, rather than to deliver a sum certain upon occurrence of an event. *See* Kimball and Davis, *The Extension of Insurance Subrogation*, 60 Mich. L. Rev. 841, 851 (1962). By providing for the right of subrogation the parties in effect agreed that the purpose of the contract was indemnity. *Id.* at 864.

---

each have a lien for the amount of a just and reasonable charge for the service rendered, but not exceeding five hundred dollars in the case of a hospital, one hundred dollars for all physicians and one hundred dollars in the case of all nurses, on the claim of such injured person or of his personal representative, against the person, firm or corporation whose negligence is alleged to have caused such injuries, unless the injured person, his personal representative or members of his family, is paid under the provisions of the Workmen's Compensation Act."

* * *

"Code § 32-140. Subrogation.—Any municipal corporation or any person, firm or corporation who may pay such charges, shall be subrogated to the lien provided for by this chapter."

We agree with Blue Cross-Blue Shield that the effect of the subrogation provision was to impress upon any subsequent recovery by the participant, Mrs. Collins, an equitable lien for amounts advanced for her benefit under the contract. *See* Annot., 19 A.L.R.3d 1054, 1063 (1968); 8 U.C.L.A. L. Rev. 668 (1961).

In *City of Richmond* v. *Hanes, supra,* citing a California case, *Fifield Manor* v. *Finston,* 54 Cal.2d 632, 640, 354 P.2d 1073, 1078 (1960), we equated subrogation with assignment. There a policeman, Hanes, was injured on duty by a negligent tortfeasor. The City paid Hanes's wages during his disability and his hospital and medical bills. After Hanes had brought an action and settled with the tortfeasor for $25,000, the City claimed, by assignment or subrogation, the right to reimbursement from the settlement fund. We denied the City's claim on the grounds that Hanes had not agreed to an assignment, that Hanes was not bound by a personnel rule of which he was not aware that purported to give rise to an assignment, and that the City was not subrogated to the extent of its payments either by conventional or legal subrogation. Clearly there was no contractual right of subrogation, and on the issue of legal subrogation we concluded that the City had acted as a volunteer.

*Hanes* is distinguishable from the present case because here we are concerned with the contractual right to subrogation. Blue Cross-Blue Shield paid, not as volunteers, but as parties fulfilling contractual obligations. *Fifield Manor* v. *Finston, supra,* upon which we relied in proscribing either subrogation or assignment of personal injury claims, may have reached the right result under California law in prohibiting direct action by a subrogee against a third-party tortfeasor. But the broad dictum therein referred to in *Hanes,* equating subrogation with assignment, has been widely criticized. *See* 59 Mich. L. Rev. 1256 (1961); 8 U.C.L.A. L. Rev. 668 (1961); 109 U. Pa. L. Rev. 443 (1961). To the extent that the language in *Hanes,* unnecessary to that decision, approved the *Fifield* rule, it must be superseded.

In permitting Blue Cross-Blue Shield to be subrogated to the extent of their payments for Mrs. Collins we do no violence to the common law policy against assignment of tort claims, designed to prevent trafficking in litigation and recognized in Code § 8-628.1. There is no danger of champerty and maintenance, since Blue Cross-Blue Shield seek to enforce a contractual right of subrogation against sums recovered by a participant from a tortfeasor only to the extent of payments made for the participant's benefit. To deny this right of subrogation is to permit and condone the unjust enrichment of

a participant who has been doubly compensated for the same expenses.

The parties voluntarily agreed to an indemnity contract, expressly stipulating the right of subrogation. The general right of subrogation has long been recognized and favored in Virginia. *Federal Land Bank* v. *Joynes, supra* at 402, 18 S.E.2d at 920; *McKay* v. *Citizens Rapid Transit Co.*, 190 Va. 851, 859, 59 S.E.2d 121, 124 (1950); *see also* the statutory approval of subrogation under the Workmen's Compensation Act, Code § 65.1-112. In the absence of legislative expression of public policy to the contrary, we will not deny the right to enforce subrogation pursuant to this contract freely entered into. *See* Kimball and Davis, *supra* at 860-72. Significantly, the legislature has refrained from prohibiting subrogation by hospital and medical service associations, although it has expressly prohibited the inclusion of subrogation provisions for medical payments in automobile liability policies by Code § 38.1-381.2.

Other jurisdictions, including those forbidding assignment of tort claims, have permitted recovery pursuant to an express subrogation clause under health care contracts similar to the present one. *See Michigan Medical Service* v. *Sharpe*, 339 Mich. 574, 64 N.W.2d 713 (1954); *Demmery* v. *National Union Fire Ins. Co.*, 210 Pa. Super. 193, 232 A.2d 21 (1967); *Hospital Service Corp.* v. *Pennsylvania Ins. Co.*, 101 R.I. 708, 227 A.2d 105 (1967). We, too, believe that there is a sound distinction between assignment of a tort claim and subrogation of hospital and medical payments by contract. *See Restatement of Restitution*, § 162, comment *h* at 660 (1937).

We conclude that Blue Cross-Blue Shield were entitled to enforce their contractual rights of subrogation of hospital and medical payments against the fund recovered by Mrs. Collins. This conclusion makes it unnecessary to consider the other assignments of error. Accordingly, the order of the trial court is reversed and final judgment is entered for Blue Cross-Blue Shield for $2,584, with interest and costs, subject to payment of an attorney fee to Mrs. Collins's attorney on this sum as part of the recovery obtained from the tortfeasor, as heretofore agreed upon by the parties.

*Reversed and final judgment.*