**54**

In re Romeo Calulot BAYLON, Debtor.

ROANOKE MEMORIAL HOSPITAL AS-
SOCIATION, t/a Roanoke Memorial
Hospitals, Plaintiff,

v.

Romeo Calulot BAYLON and Michael J.
Aheron, Trustee, Defendants.

Bankruptcy No. 7–81–01252.
Adv. No. 7–81–0502.

United States Bankruptcy Court,
W. D. Virginia,
Roanoke Division.

March 1, 1982.

Dudley F. Woody, Roanoke, Va., for plaintiff.

Ross C. Hart, Roanoke, Va., for debtor, defendant.

Michael J. Aheron, Roanoke, Va., trustee-defendant.

## MEMORANDUM OPINION

H. CLYDE PEARSON, Bankruptcy Judge.

The question presented here involves the validity of a purported assignment of a personal injury claim by Romeo Calulot Baylon (Baylon) to Roanoke Hospital Association, t/a Roanoke Memorial Hospital, (Hospital or Plaintiff).

In April, 1981, Baylon, following an injury sustained when he was struck by an automobile, was admitted to the hospital for treatment. He was released on July 25, 1981, but later readmitted for further treatment on August 19, 1981, remaining until September 2, 1981. The hospitalization resulted in a claim of approximately $25,-000.00 for treatment.

Baylon is a native of the Phillipines where he had apparently graduated from high school and had some college work. Thereafter, he left his native country and obtained a job in Kuwait in 1978 and later in March, 1981, at the Homestead in Hot Springs, Virginia. Although the schools in the Phillipines have bilingual instruction, Baylon speaks English haltingly and had been in this country for a short period prior to the accident.

Baylon employed David Hart, Esq., a Roanoke Attorney, to represent his interest in the personal injury case out of which his injuries arose. Hart was employed on May 6, 1981. On May 7th he had Baylon execute medical authorization forms which were mailed to the hospital on May 15, 1981, along with his letter of transmittal advising the hospital of his representation of Baylon. Hart testified that he advised his Client not to sign any documents without first obtaining the approval of Hart. Thereafter, fol-

lowing receipt of a call from an employee of the hospital concerning his request, he sent a check for $10.00 to cover the costs of hospital records requested. Sometime thereafter, Baylon called Hart advising that he had been requested to sign documents which Baylon understood related to the requested records and Hart advised him to sign the documents, assuming from what Baylon had told him that they related to his request for medical records. Hart testified that he did not see the assignment form prior to its execution and would have specifically advised Baylon not to sign the same had he known its import. He did not learn the true identity of the document until sometime afterwards.

On July 14, 1981, after learning of the assignment, Hart had Baylon execute a letter (Exhibit 4 herein) in an effort to revoke the assignment. Referring to the assignment, Hart further testified that generally hospitals will accept authorization signed for counsel as authority to submit medical records to a patient's attorney but that the hospital in this instance seemed to have problems out of the ordinary.

A representative of the hospital who obtained the assignment testified that Baylon, due to the serious nature of his injuries and extensive medication was precluded from a conference with her until May 29, 1981, when the alleged assignment was executed. Prior to discussing the matter with Baylon, she first obtained permission from his nurse; that she explained the document to Baylon as a document that would help the hospital deal with the attorney and further explained to Baylon that he would be liable for any balance of the bill remaining and that she needed the documents for Baylon's attorney and the insurance companies.

The "assignment of settlement" (Exhibit 2) contains the language "I hereby request and authorize Smeltzer, Hart & Palmer, Attorney, to pay directly to Roanoke Memorial Hospitals any and all benefits due me for services rendered at Roanoke Memorial Hospitals." The document further provides that Baylon would be responsible for any

difference to the hospital. At all times in question, the hospital employees had full knowledge that Baylon was represented by counsel, the he was not a native of this Country, spoke English only haltingly, and even at the time of the execution of the documents on May 29th was in such poor physical and mental condition that Baylon's nurse was consulted before conferring with him regarding the alleged assignment. Further with knowledge of the representation of Baylon by Hart, the Attorney was never consulted as to the execution of the alleged assignment.

The settlement of the personal injury claim was made in the amount of $25,000.00 from which Hart claims a contingent fee for services rendered, leaving a balance of approximately $17,000.00. The Debtor, Baylon, has filed a homestead deed seeking an exemption of $5,000.00 and the Trustee, Michael J. Aheron, Esq., a party defendant claims the remaining balance of said settlement as an asset.

The hospital claims a right to the proceeds of the settlement by virtue of the assignment. Baylon, the Debtor, claims entitlement to his $5,000.00 homestead exemption despite the alleged assignment and the Trustee contends that the assignment is invalid but does not contest the Debtor's right to homestead exemption nor the attorney's fees, but claims the remaining proceeds as an asset to be administered free of any rights the hospital has by virtue of its alleged assignment.

Upon the foregoing facts, this Court finds and concludes that the assignment is invalid for the following reasons:

■ First, the facts clearly show that Baylon did not understand the import of the alleged assignment, that in discussing the document with his attorney, he was under the impression and the attorney also assumed that the document related to medical record authorizations, which the attorney had requested. Although the hospital employee did not fully appreciate the attorney-client relationship between Hart and Baylon relating to Baylon's legal rights surrounding his personal injury claim, never-

theless, the innocent actions in obtaining the alleged assignment does not dilute the mistake and misunderstanding surrounding the documents and his right to counsel's advice.

In 54 *Am.Jur.2d Mistake, Accident, or Surprise* § 7 at page 454 the author sets forth the principal as follows:

> If a misrepresentation is innocently made, and both parties are mistaken, equity may treat the case as one of mutual mistake. Moreover, knowledge by one party of the other's mistake is equivalent to mutual mistake, hence, subject to recision.

The Court must find that the testimony of the hospital employee to the effect that the document was to assist the hospital in dealing with the attorney was sufficient to mislead Baylon into believing what he told his attorney, that the document related to the requested medical records only. This finding is further supported by the vague language set forth in the alleged assignment document itself. When this is coupled with all the other circumstances, there is little doubt that the document was executed by Baylon under a complete misunderstanding of the facts.

Secondly, the assignment is invalid under *Virginia Code Section 8.01–26* which prohibits such assignments. Plaintiff contends that under the case *Collins v. Blue Cross* 230 Va. 540, 193 S.E.2d 782 (1973), its right to the assignments is supported. The *Collins* case deals with contract subrogation rights. This is quite different from an assignment of a tort claim in contravention of § 8.01–26. See Re: *Musgrove*, 3 C.B.C.2d 556, 7 B.R. 892 (Bkrtcy.1981 W.D.Va.)

The assignment being herein avoided, the funds remaining after payment of attorney fees and the homestead exemption, constitute an asset to be administered by the trustee. As a practical matter, the hospital will likely receive the major portion of the assets in any event which the trustee distributes.

An Order will be so entered.