## Richmond

STEPHANIE DWYER

V.

ALEXANDER T. YURGAITIS

September 9, 1982.

Record No. 800225.

Present: All the Justices.

*David L. Duff (Odin, Feldman & Pittleman, P.C.*, on brief), for appellant.

*Thomas V. Monahan (Hall, Monahan, Engle, Mahan and Mitchell*, on brief), for appellee.

THOMPSON, J., delivered the opinion of the Court.

Stephanie Dwyer was a passenger in a motor vehicle operated by her husband in an easterly direction on U.S. Highway 29, a four-lane divided highway, in Fauquier County. Because of the negligence of James Steward, his vehicle struck the Dwyer vehicle broadside and knocked it across the median strip into the westbound lanes of Highway 29, rendering it inoperable. Approximately one minute later, before Dwyer could extricate herself from the disabled car, Alexander T. Yurgaitis, who was traveling in the westbound lane, struck the Dwyer vehicle. Dwyer sued Steward for personal injuries in Fairfax County and sued Yur-

gaitis for personal injuries in Fauquier County. Just before trial in the Fairfax County suit, Dwyer executed a general release and received a settlement from Steward, and the trial court dismissed the case. Upon learning of this action, counsel for Yurgaitis filed a plea of release in the Fauquier County suit. The Fauquier County trial court ruled that the release of Steward also released Yurgaitis and dismissed the suit.

Dwyer's argument suggests that she was denied her right to a jury trial on the release issue. The record shows, however, that she affirmatively waived this right.[1] Her arguments also imply that the trial court decided the issues in the case as a matter of law. The record does not support this implication. The trial court made a number of findings of fact upon which it based its conclusion that Dwyer had suffered an indivisible injury and had settled in full therefor. Accordingly, the real question in the case is whether the evidence supports the trial court's conclusion.

### Sufficiency of the Evidence.

Our standard of review is mandated by Code § 8.01-680. The judgment of the trial court will not be disturbed unless it is plainly wrong or without evidence to support it.

The record clearly shows that there was sufficient evidence to support the decision of the trial court.[2]

---

[1] At the hearing on the plea of release on October 16, 1979, this dialogue transpired:

The Court: *All right, counsel agree that the court should decide the issue of fact on this question?* [Emphasis added.]

Mr. Monahan [Yurgaitis' counsel]: Yes, sir.

Mr. Duff [Dwyer's counsel]: Yes, Your Honor.

The Court: Is there any other testimony, or any other witnesses?

Mr. Monahan: No, sir, we have also subpoenaed the original court record, which I believe is now in the court's possession from the companion case. . . .

The Court: Very well.

Mr. Monahan: I believe that is the only testimony that would be appropriate, Your Honor.

The Court: All right, Mr. Duff, do you agree that this is correct?

Mr. Duff: Your Honor, that is correct. Everything Mr. Monahan said is correct. . . .

[2] In his opinion letter dated October 17, 1979, the trial judge stated in pertinent part: [P]laintiff has shown by her conduct of the two cases by counsel that her injuries received from the two collisions were indivisible and that the first tort feasor, Steward, is responsible for all of her injuries which proximately resulted from his tort even though some of the injuries may have been received from the subsequent collision and negligent act on the part of another tort feasor, Yurgaitis.

The allegations contained in the two motions for judgment, in terms of description of the injuries, are practically the same.[3] Dwyer never attempted to amend either pleading to distinguish the injuries between the respective collisions.

Although the answers to the interrogatories in the Steward case and the response to the bill of particulars in the present case are not stated *in haec verba*, they, too, are alike in terms of substance. Neither makes any distinction between the injuries received in the two crashes. Once again, no effort was ever made to try to differentiate the injuries by means of supplementary responses to either the interrogatories or the bill of particulars.[4]

The medical reports submitted by the principal treating physician, outlining his evaluation and treatment of Dwyer, encompassed identical injuries. Furthermore, Dwyer supplied copies of this same report in response to both defense discovery requests.

During the negotiations over the settlement of the Steward case, Dwyer's attorney always contended that Steward was wholly responsible for the injuries described in the medical report.[5] The

---

[3] At the hearing on October 16, 1979, counsel for Dwyer stated that "the Motions for Judgment in both cases are, if not identical, very, very similar."

[4] In fact, in replying to interrogatories from Steward, Dwyer described her injuries as "[p]artial dislocation of the left sterno-clavicular joint, curved spine, cervical section, possible herniated disc, bruises on knees, breasts and right elbow," although in her discovery deposition of February 16, 1978, she claimed most of these same injuries resulted from the Yurgaitis collision.

[5] In the October 10, 1979, deposition of Richard Lewis, counsel for Steward, Yurgaitis' counsel engaged in this exchange with Lewis:

Mr. Monahan: May I just ask this, would it be appropriate for him to state . . . that you arrived at a compromise between your contentions that the injuries attributable to your accident were less than all of the injuries and Mr. Duff's position that your client was responsible for all of the injuries, would that be a fair statement of your compromised [sic]?

A. That might be, I don't know what was in his mind, As far as I'm concerned, the plaintiff was pushing for our two defendants to claiming that all of these injuries came from our accident. I didn't believe so, I don't know what was in Mr. Duff's mind.

Q. No, sir, but I'm not asking about his mind, I'm asking about the representations made to you in an effort to achieve a compromise at the highest possible figure. He represented that that was his position, did he not? He wanted to be paid for everything?

A. Well, sure, I mean he was trying to get every penny he could for his client, I'm sure and I'm sure no matter what was in his mind he had never gotten down from asserting that all of these injuries were caused in our accident and we were responsible for them.

deposition of Steward's attorney, submitted into evidence below, is replete with references to claims by Dwyer's attorney that all the injuries to Dwyer were the result of the first collision.

As to the release form, it is a general release to Steward and "all other persons" who may be claimed to be liable "from any and all claims" that may arise from the accident. This blanket release refers only to a single accident that occurred on April 27, 1977. It does not refer to the collision with Yurgaitis. Also, Dwyer never attempted to limit liability by amending the wording of the release or substituting a covenant not to sue.

It is apparent from the record that Dwyer failed to segregate the injuries caused by the two collisions. Consequently, the release of Steward released all other tort feasors from liability for the same injuries, including Yurgaitis.

It is true, as Dwyer argues, that in the letter of May 7, 1979, from her counsel to Steward's counsel, the attorney stated the majority of Dwyer's injuries did not result from the second accident, but he in no way sought to separate or classify the injuries. This communication between counsel was not binding on the trial court which obviously reached its conclusion from an appraisal of the totality of the circumstances surrounding the litigation. The record abundantly supports the conclusion reached.

We cannot say as a matter of law that the trial court's decision is plainly wrong or without evidence to support it, and we will, therefore, affirm the judgment.

*Affirmed.*