The CINCINNATI INSURANCE COM-
PANY, a corporation, Plaintiff,

v.

VULCAN MATERIALS CO., INC., a
corporation, Defendant.

Civ. A. No. 83–Y–2502–S.

United States District Court,
N.D. Alabama, S.D.

June 29, 1984.

Alan D. Levine, Birmingham, Ala., for debtor/plaintiff.

Leo E. Costello, Birmingham, Ala., for plaintiff-Cincinnati Ins. Co.

Thomas B. Huie, Charles H. Clark, Jr., Birmingham, Ala., for defendant.

Jack Rivers, Birmingham, Ala., U.S. Trustee.

## MEMORANDUM OPINION

ACKER, District Judge.

When the above entitled cause came on for trial on June 13, 1984, the parties mutually agreed to strike the jury demand, and the case was submitted on stipulated facts. Because of the jury demand, the adversary proceeding was transferred to this Court by the United States Bankruptcy Court in case no. 80–04865, wherein Equipment Service Co., Inc. (Equipment) was the debtor. The original basis of federal jurisdiction was the bankruptcy of Equipment. Equipment has now been stricken as a party, but the Court retains jurisdiction because of the jurisdictional amount and the diversity of citizenship as between the remaining plaintiff The Cincinnati Insurance Company (Cincinnati) and the defendant Vulcan Materials Co., Inc. (Vulcan). 28 U.S.C. § 1332.

The pertinent facts, including the procedural facts, are relatively straightforward and can be stated briefly. Vulcan rented a backhoe from Equipment. The written rental agreement provided, *inter alia:* (1) that Vulcan would return the backhoe in the same condition as when it left Equipment's yard, (2) that the backhoe would not be removed from Helena, Alabama (Vulcan's worksite to which the backhoe was delivered), without Equipment's written permission, and (3) that Vulcan would be responsible for insurance coverage on the backhoe. Equipment rendered its invoice to Vulcan for the rent, including an item for "insurance" in the amount of $56.40. Vulcan paid the invoice. On September 2, 1980, while being transported outside of Helena by Vulcan, and without any written permission from Equipment, the backhoe was substantially damaged when the backhoe crashed into a highway overpass which was lower than the combined height of the backhoe and the trailer on which it was loaded. The backhoe was insured by Cincinnati, a casualty insurance company, which paid Equipment the sum of $23,-821.01 upon Equipment's claim of loss. It is stipulated that this $23,821.01 correctly reflects the liability of Cincinnati to Equipment and that the damage is not overstated. Cincinnati's policy of insurance contained, *inter alia*, the following three provisions here pertinent:

> *Subrogation.* This Company [Cincinnati] may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

*     *     *     *     *     *

> *Subrogation.* In the event of any payment under this policy, the company [Cincinnati] shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights, but this insurance shall not be invalidated should the *Insured* waive in writing prior to a loss

any or all right of recovery against any party for loss occurring to the property described herein.

\* \* \* \* \* \*

NO OTHER INSURANCE—No other insurance is permitted on the property insured unless endorsed hereon.

The backhoe was among the items of personal property owned by Equipment and insured by Cincinnati against casualty loss. There was no endorsement permitting other insurance on this piece of equipment.

Equipment, as lessor of the backhoe, and Cincinnati, as alleged subrogee, jointly filed this complaint against Vulcan in the Bankruptcy Court. The original complaint simply charges a breach of the rental agreement by Vulcan. Cincinnati demands judgment in the amount of $23,821.01 as subrogee. Equipment demanded judgment in the amount of $16,223.85 for its alleged loss above and beyond what it had received from Cincinnati. Not only does Vulcan deny liability, but it filed a counterclaim against Equipment claiming indemnity as against any recovery which Cincinnati might obtain from Vulcan, the theory being that it was Vulcan which had paid the insurance premium and therefore that Vulcan was, in fact, the equitably insured party.

After the transfer of the case to this Court, after the pre-trial conference, and shortly before trial, Equipment dismissed its claim against Vulcan and Vulcan dismissed its counterclaim against Equipment. Neither on the occasion of these mutual dismissals, nor at any other time, does there appear to be any written assignment by Equipment to Cincinnati of any of Equipment's claims or choses in action against Vulcan, that is, except as may be contained in the insurance policy itself.

From the foregoing facts several legal questions arise.

### The Statute of Limitations Defense

First, Vulcan interposes as a purported absolute defense the Alabama statute of limitations of one year, § 6–2–39(a)(5) and (7), claiming that Cincinnati's (and originally Equipment's) cause of action is, in reality, *ex delicto,* and cannot be successfully disguised by dressing it up as a contract claim. Obviously if the complaint is, in truth, a tort claim, it is time barred. However, if it is truly a contract claim it is not barred. The complaint carefully avoids any allegations of negligence and relies entirely on the language of the lease. One question is whether or not the lease provides for, or necessarily implies, a duty of reasonable care by Vulcan toward the leased personal property, a duty which, if breached, would constitute a breach of contract rather than a tort. Vulcan argues that because the lease does not set forth a specific duty of care, the lease does not give rise to any remedy in contract and that any wrongdoing by Vulcan must be recognized only as an act *ex delicto.* For this proposition Vulcan cites *Dumas v. Southern Guaranty Ins. Co.,* 408 So.2d 86 (Ala.1981), and *Chambers v. Birmingham Trust & Savings Co.,* 232 Ala. 609, 168 So. 893 (1936). Vulcan overlooks the specific contractual provisions in this contract which, in effect, guarantee the return of the backhoe in good condition, and which guarantee that the backhoe will not be removed from Helena without Equipment's written permission. Vulcan also overlooks the law of bailment which itself implies a duty of due care, and, if the bailment is supported by a consideration, creates the three year statute of limitations for breach of contract if the duty is breached. The Court is unconvinced by Vulcan's statute of limitations defense despite what the Supreme Court of Alabama may have said in *Chambers v. Birmingham Trust & Savings Co., supra.* The Court's reason is that *but for* Vulcan's breach of the precise terms of the lease against removing the backhoe from Helena, this particular damage would not have occurred, that is, unless it can be said that Vulcan would have run the backhoe into a bridge *inside* the city limits of Helena anyway. There is no such evidence. It may be unnecessary to determine whether or not the promise to return the backhoe in good condition neces-

sarily implies a promise to use due care, but the Court nevertheless finds that it does.

The Court therefore finds that Equipment's cause of action was *ex contractu* and thus is not barred by the one year statute of limitations.

### The Standing to Complain

The second and more important question here is whether or not Cincinnati (as opposed to Equipment) has any cause of action of its own, or standing to make a claim against Vulcan.

■ The leading Alabama case on subrogation under circumstances such as these is *City of Birmingham v. Walker*, 267 Ala. 150, 101 So.2d 250 (1958), which recognizes the general American rule that in the absence of a provision in the insurance policy itself providing for subrogation, an insurance company is not, simply by virtue of its payment of a loss, subrogated to the rights of its insured against the one who caused the injury. The same general rule appears in 46 C.J.S. Insurance § 1209, at p. 157.

■ The policy here contains two separate attempts at providing a right of subrogation. The first says:

*Subrogation.* This Company may require from the insured an assignment of all right of recovery against any party for loss to the extent that payment therefor is made by this Company.

There is no evidence of any such assignment by Equipment to Cincinnati. The second subrogation clause states:

*Subrogation.* In the event of any payment under this policy, the company shall be subrogated to all the *insured's* rights of recovery therefor against any person or organization and the *insured* shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The *insured* shall do nothing after loss to prejudice such rights, but this insurance shall not be invalidated should the *Insured* waive in writing prior to a loss any or all right of recovery against any party for loss occurring to the property described herein.

Again, the language contemplates a subsequent separate instrument of assignment at the time of or after the payment of the loss, but in this case there was no such assignment.

■ Assuming for the sake of discussion that the assignment or right of subrogation was automatic under the language of the policy, the question remains as to what *kinds* of rights could thus be acquired by Cincinnati. Construed in context, and giving the language its usual and customary meaning in the insurance industry, this language only contemplates subrogation as to the insured's rights against third party *tort-feasors* and not against contracting parties or indemnitors. This Court has been unable to find any case which would clearly put Cincinnati in the shoes of Equipment vis-a-vis Vulcan as to any and all contract claims which Equipment might have against Vulcan under these circumstances. The very concept of subrogation contemplates *tort* liability unless expressly expanded beyond it by specific contract language. In its brief Cincinnati cites *Blue Cross of Virginia v. Collins*, 213 Va. 540, 193 S.E.2d 782 (1973), for the proposition that subrogation is based on the principle of equity which seeks to prevent unjust enrichment. The Court will discuss *infra* which of the parties here might be more truthfully described as being unjustly enriched if Vulcan ultimately gets stuck with this loss. To recognize subrogation in this case would be to create an anomaly and to recognize a bonanza for insurers. A second anomaly appears from the fact that Equipment and Cincinnati purported to *split* the cause of action. When Equipment's portion of its contract claim was dismissed with prejudice the whole claim ordinarily would have fallen. It is unique, to say the least, to allow a plaintiff to assign just a *part* of its cause of action. Also, to recognize subrogation here would run afoul of the rule which precludes a non-party from suing on the contract, that is, without showing (1) a specific assignment of the rights of a contracting party

and (2) that those rights are assignable. Vulcan certainly did not agree in this case that Equipment could assign to a third party any rights which Equipment had under its equipment lease. Under the circumstances, any ambiguities in the documents must be resolved against Cincinnati and against Equipment, the respective draftsmen of the policy of insurance and of the lease. There are too many "ifs", "ands" and "buts" to resolve this dispute in favor of Cincinnati. This Court cannot logically conclude that Cincinnati unequivocally and openly acquired a portion of Equipment's contract claim and now has the right to enforce it against Vulcan.

■ Only for the sake of argument, if the Court should be incorrect in its construction of the insurance subrogation provisions and of the general insurance law of Alabama, the Court would nevertheless reach the same ultimate conclusion and would find for Vulcan and against Cincinnati because of the estoppel created by Cincinnati's undenied acceptance of the insurance premium which really came from Vulcan. Cincinnati wrote an insurance policy *which expressly precluded other insurance on this backhoe.* There is no way Vulcan could have insured against this claim without violating the terms of Cincinnati's policy. Vulcan did what it was required to do by its contract, no more and no less. It would be inequitable, unconscionable and paradoxical for Cincinnati to recover against the party who actually paid the premium covering the loss. It stretches credulity to suggest that a party who never agreed to indemnify the insurance company which enjoyed the premium which the party paid in order to cover precisely the kind of loss which occurred, can nevertheless be liable over to the insurer as an indemnitor. Such a result can never occur absent an unequivocal understanding to that effect by and between all affected parties. When Vulcan signed this lease saying that "lessee is responsible for insurance coverage", it hardly could have meant that after it paid its premium for coverage it still exposed itself as a backstop insurer. If such a result were allowed, Cincinnati would be the party who is "unjustly enriched". This insurance policy conspicuously did *not* contain language which precluded Equipment from passing on the cost of the insurance, and when Equipment did what it apparently had a right to do, any subrogation rights which Cincinnati might otherwise have had disappeared. Equipment simply cannot be heard to say to Vulcan on behalf of Cincinnati, "You must pay a premium for insurance on the property but if the property is damaged you pick up the tab", that is, unless the message is clear and unambiguous.

### Conclusion

For the foregoing reasons judgment will be entered against Cincinnati and in favor of Vulcan. This opinion does not purport to adjudicate any possible controversy between Equipment and Cincinnati.