788 F.2d 1016
 54 USLW 2581
 John Henry HINES, Jr., Appellee,
v.
BLUE CROSS BLUE SHIELD OF VIRGINIA, Appellant,
Blue Cross and Blue Shield of Southwestern Virginia, Amicus Curiae,
Group Hospitalization and Medical Services of the District
of Columbia, Inc., Amicus Curiae.
 No. 85-1875.
 United States Court of Appeals,
Fourth Circuit.
 Argued Jan. 8, 1986.
Decided April 21, 1986.
 
 Thomas E. Spahn (Gilbert E. Schill, Jr., Barbara Ann Williams, McGuire, Woods & Battle, on brief), for appellant.
 W. Carrington Thompson (Clement & Wheatley, on brief), for appellee.
 Heman A. Marshall, III, H. Allen Glover, Jr., T. Daniel Frith, III; Woods, Rogers and Hazelgrove, on brief, for amicus curiae Blue Cross and Blue Shield of Southwestern Virginia.
 Charles J. Steele, Thomas F. Fitzgerald, Pierson, Ball & Dowd, on brief, for amicus curiae Group Hospitalization and Medical Services, Inc.
 Before HALL and WILKINSON, Circuit Judges, and SENTELLE, United States District Judge for the Western District of North Carolina, sitting by designation.
 WILKINSON, Circuit Judge:
 
 
 1
 This case concerns the validity of a provision in a Blue Cross and Blue Shield contract which excludes payment for services already covered by workers' compensation. Virginia law prohibits provisions in policies that deny recovery for services for which the insured has been reimbursed by "a third party responsible for such personal injuries." Va. Code Sec. 38.1-342.2 (1980). The district court decided that a "workers' compensation carrier, who stands in the shoes of the employer, would be a third person responsible for personal injuries" within the meaning of the statute, and granted summary judgment for plaintiff. We do not subscribe to that interpretation, nor do we believe that in enacting Sec. 38.1-342.2 the Virginia legislature intended to foreclose non-duplication provisions of the type used by Blue Cross here. We therefore reverse the decision of the district court.
 
 I.
 
 2
 John Henry Hines was injured in a two-car accident in Virginia in 1982 while working for English Construction Company. English Construction, through its insurance carrier, reimbursed Hines for his medical expenses as required by the Virginia Workmen's Compensation Act, Va.Code Secs. 65.1-1 to 65.1-163 (1980). Hines also filed a civil action against Wallace Herndon, the driver of the other car, and that suit was settled to the satisfaction of Hines, English Construction, and its carrier, Liberty Mutual. In addition, Hines asked Blue Cross to reimburse him for his medical expenses.
 
 
 3
 At the time of the accident, Hines had a Blue Cross contract, a Blue Shield contract, and a Major Medical contract in effect with Blue Cross. Each contained a non-duplication of benefits provision that excluded payment for services covered by workers' compensation.[1] Because Hines had already received workers' compensation for his medical expenses, Blue Cross denied coverage for his injuries. Hines contends that Va. Code Sec. 38.1-342.2 bars Blue Cross from denying him coverage on the basis of the exclusionary provisions.
 
 
 4
 Section 38.1-342.2 provides that no contract of insurance shall "contain any provision denying or limiting the recovery ... for services rendered for the treatment of personal injuries, for which services, payment or reimbursement has been or is to be received by or for the account of any such person, from any claim against or settlement with a third person responsible for such personal injuries."
 
 
 5
 Whether the statute applies to the Blue Cross contracts turns on what the Virginia legislature meant by "responsible." Hines contends that the legislature meant "financially responsible." Since the workers' compensation act compels English Construction to reimburse Hines for medical expenses for injuries in the course of employment, Hines argues that the employer is "responsible for such personal injuries." Under Hines' interpretation of the statute, Blue Cross would therefore be barred from enforcing its non-duplication provisions.
 
 
 6
 Blue Cross responds that the legislature meant "causally responsible." Under this interpretation, the "third person responsible for such personal injuries" is the tortfeasor, not the employer which must pay workers' compensation. If one reads the statute this way, it does not speak to the legal responsibilities fixed by workers' compensation laws and would not prohibit the Blue Cross non-duplication provisions.
 
 II.
 
 7
 We hold that Va. Code Sec. 38.1-342.2 does not operate to prohibit provisions that exclude coverage when there has already been recovery under workers' compensation law. We interpret "responsible" to mean "causally responsible," in accordance with the usage of the Virginia Supreme Court. The history of the statute convinces us that it was enacted to address a specific problem raised by two recent Virginia cases, and not to overturn case law established some years before. Other statutes that assume the validity of such non-duplication provisions persuade us that the legislature did not intend to prohibit those that appear in Hines' contracts.
 
 
 8
 The ordinary meaning of a "person responsible for such injuries" is the person who caused the injuries, who did the damage. The Virginia Supreme Court has used "responsible" in this way as well. The court has long recognized that in a workers' compensation case, the tortfeasor will not necessarily be the employer, and the court calls the tortfeasor the responsible party. "His death was occasioned by the crash of an airplane under the control of BEAC, and was therefore due solely to its wrongful act, neglect, default and breach of duty. The party responsible for the death of Sheris is BEAC...." Sheris v. Sheris Co., 212 Va. 825, 188 S.E.2d 367, 373, cert. denied, 409 U.S. 878, 93 S.Ct. 132, 34 L.Ed.2d 132 (1972) (emphasis added). Other Virginia cases use the word "responsible" to describe the one who caused the injuries. See, e.g., Dwyer v. Yurgaitis, 224 Va. 176, 294 S.E.2d 792, 793 n. 2 (1982) ("the first tort feasor, Steward, is responsible for all of her injuries"); Lackey v. Brooks, 204 Va. 428, 132 S.E.2d 461, 464 (1963) (where plaintiff effected accord and satisfaction with one tortfeasor, "his claim against others responsible for his injuries was discharged"). See also Sheris v. Travelers Insurance Co., 491 F.2d 603, 604 (4th Cir.), cert. denied, 419 U.S. 831, 95 S.Ct. 54, 42 L.Ed.2d 56 (1974).
 
 
 9
 While the uses of the word "responsible" were not undertaken in the context of the problem posed by the present statute, they plainly reinforce the intuitive sense in tort law that the responsible person is the one who caused the injuries. Moreover, "responsible" here explicitly refers to responsibility for the injuries themselves, not to responsibility for their treatment or for other financial loss occasioned thereby.[2]
 
 
 10
 The theory that "responsible" means causally rather than financially responsible is further supported by the historical context of Sec. 38.1-342.2. The statute was enacted specifically to reverse two holdings of the Virginia Supreme Court: Collins v. Blue Cross of Virginia, 213 Va. 540, 193 S.E.2d 782 (1973), and Reynolds Metals Co. v. Smith, 218 Va. 881, 241 S.E.2d 794 (1978). The Virginia Supreme Court held in Collins that a subrogation provision in a Blue Cross-Blue Shield contract was not contrary to public policy. The Virginia legislature acted promptly to reverse that decision, providing in 1973 in Sec. 38.1-342.2 that "No contract of insurance providing hospitalization, medical, surgical and similar or related benefits ... shall contain any provision providing for subrogation ... to the rights which the person receiving such benefits may have to recover from a third person for personal injuries." See Reynolds, 241 S.E.2d at 796.
 
 
 11
 In Reynolds, the insurance policy contained a non-duplication of benefits provision. The employer, Reynolds, and its insurer paid medical benefits to employees who had been injured by third party tortfeasors, but asked them to sign an agreement promising to repay the benefits out of any recovery. The court held that Sec. 38.1-342.2 did not prohibit this nonduplication of benefits agreement. In 1979, the Virginia legislature negated that decision and added a second sentence to the statute: "[n]or shall any such contract of insurance or contract or plan contain any provision denying or limiting the recovery ... from any claim against or settlement with a third person responsible for such personal injuries."
 
 
 12
 The question raised by Hines is whether the legislature intended to prohibit non-duplication of benefits provisions when the benefits derive from workers' compensation law rather than from claims against tortfeasors. In 1962, the Virginia Supreme Court held that a non-duplication provision nearly identical to the one in Hines' case was valid. Cash v. American Health Insurance Corp., 203 Va. 719, 127 S.E.2d 119, (1962). Given the speed and clarity with which it reversed the holdings of Collins and Reynolds, we do not think that the legislature waited seventeen years to implicitly overrule the holding of Cash.
 
 
 13
 The facts of Cash are nearly identical to the facts of this case. Philip Cash was injured in a car accident during the course of his employment with the City of Hampton. Cash was covered under the workers' compensation act, and the city's compensation carrier paid his hospital and doctor's bills. Cash's insurance policy with American Health Insurance Corporation excluded coverage for "expense occasioned by injury arising out of, or in the course of, employment to the extent it is the statutory liability of the employer of the Insured." 127 S.E.2d at 120. The court held that the exclusion clause precluded Cash from recovering from American Health, noting that "[i]t is not unusual to find clauses in public liability and hospital service insurance contracts excluding benefits or liability for injuries covered by the Workmen's Compensation Laws." 127 S.E.2d at 121.
 
 
 14
 The promptness with which the legislature reversed the holdings of Collins and Reynolds strongly suggests that it did not intend to reverse the holding of Cash, a case decided seventeen years before the amendment of Sec. 38.1-342.2. We think Cash remains the law, and we follow the Virginia Supreme Court's decision in that case.
 
 
 15
 Our confidence that the legislature intended to leave Cash intact is strengthened by the fact that two other statutes contemplate the use of non-duplication provisions to preclude recovery from an insurance company when the insured has already received workers' compensation. Virginia Code Sec. 65.1-102 (1985 Supp.), which governs attorneys' fees in workers' compensation cases, provides, "If a contested claim is held to be compensable under this Act and, after a hearing on the claim on its merits, benefits for medical services are awarded and inure to the benefit of a third party insurance carrier or health care provider, the [Industrial] Commission shall award to the employee's attorney a reasonable fee ..." (emphasis added). This statute supposes a situation in which it is unclear that the injury qualifies for workers' compensation, and the employee's insurer pays for medical services. If the Industrial Commission decides later that the claim was compensable under the workers' compensation act, benefits could only "inure to the benefit of a third party insurance carrier or health care provider" if the worker had been found to be entitled to workers' compensation and the carrier was entitled, because of a non-duplication provision in the policy, to be reimbursed.
 
 
 16
 Virginia Code Sec. 38.1-355 (1981), likewise implies that such a non-duplication provision is valid. It provides that "No policy of accident and sickness insurance, nor any contract under a plan ... shall contain any provision for the denial or reduction of benefits because of the existence of other like insurance except to the extent that the aggregate benefits with respect to the covered medical expenses ... exceed all covered medical expenses incurred. The term 'other like insurance' may include ... workmen's compensation insurance." Under this statute, Blue Cross could not deny Hines benefits unless his medical expenses were fully covered by other insurance, here workers' compensation. "[T]he proviso enables the insurers to prevent the insured from receiving multiple recoveries in excess of total medical expenses." Kemper & Johnson, Insurance, The Fifteenth Annual Survey of Virginia Law: 1969-70, 56 Va.L.Rev. 1356, 1358 (1970).
 
 
 17
 Statutes should be interpreted in a harmonious fashion. If Sec. 38.1-342.2 is to be consistent with Sec. 38.1-355, "other insurance," including workers' compensation, must be differentiated from recovery from a tortfeasor. A contract may eliminate duplication of benefits when the benefits come from workers' compensation and the injured party's insurer, but not when they are derived from a health insurance carrier and a tortfeasor. Workers' compensation is regarded as "other insurance" for the purposes of Sec. 38.1-355. We think it reasonable that for the purposes of Sec. 38.1-342.2, workers' compensation should be regarded as akin to other insurance rather than to recovery from a tortfeasor.
 
 
 18
 The result, that Hines could not be reimbursed for the cost of medical and hospital services by both his employer's compensation carrier and Blue Cross, is not an uncommon one. As the court in Cash noted, "In a number of cases, language, more or less similar to the exclusion clause now before us, has been held to exclude benefits or liability for injuries covered by Workmen's Compensation Laws and other compensation statutes." 127 S.E.2d at 121 (citing cases in Michigan, Tennessee, Illinois, and Iowa). In South Carolina, one may not recover under a Blue Cross contract that excludes benefits for services provided by workers' compensation when one has already received workers' compensation. Romanus v. Blue Cross and Blue Shield of South Carolina, 271 S.C. 164, 246 S.E.2d 97 (1978). Various courts have rejected attempts to recover from the medical insurer and from the employer through workers' compensation when the contract with the insurer contained a non-duplication provision. See, e.g., General Life Insurance Co. v. Barth, 167 Ga.App. 605, 307 S.E.2d 113 (Ct.App. 1983); Dowell v. Aetna Life Insurance Co., 468 F.2d 802 (4th Cir.1972), cert. denied, 410 U.S. 931, 93 S.Ct. 1374, 35 L.Ed.2d 594 (1973) (North Carolina law); Keffer v. Prudential Insurance Co. of America, 153 W.Va. 813, 172 S.E.2d 714 (1970). The result in Virginia would be the same.
 
 III.
 
 19
 In upholding this Blue Cross non-duplication provision under Virginia law, we do not attribute to the Virginia legislature an implausible intent. The General Assembly could rationally have concluded to permit certain non-duplication of benefits provisions in order to moderate health insurance costs. Premiums are generally calculated on the basis of the provisions in insurance contracts. To the extent provisions precluding double recoveries are invalidated, subscriber rates may rise. The evidence of the legislature's intention in this case persuades us that a wholesale invalidation of non-duplication provisions in health policies was not enacted and that Virginia law permits one whose medical bills have already been paid by his employer to be precluded by contract from also recovering from Blue Cross.
 
 
 20
 Hines signed contracts with Blue Cross that excluded coverage for services paid for through workers' compensation. We do not believe that Va.Code Sec. 38.1-342.2 was intended to invalidate such non-duplication provisions. The decision of the district court is therefore reversed and remanded with directions to enter judgment for defendant.
 
 
 21
 REVERSED.
 
 
 
 [1]
 Blue Cross Basic Hospital Service Contract, Article V.1(j):
 The following are not provided under the Contract:
 (j) services for injuries or diseases arising out of and in the course of the Participant's employment for which an employer is required to furnish or provide for any hospital service to the Participant by the provisions of any Federal, State, or local law or regulation; or services for injuries or diseases to which the Participant as an employee might be entitled by complying with such laws or regulations though he elects to waive his rights to such services; or services for injuries or diseases where the Participant has received any compensation therefor from his employer.
 Blue Shield Medical-Surgical Contract, Article IV and Group Major Medical Service Certificate, Article IV(a) contained similar provisions.
 
 
 [2]
 The district court expressed concern that interpreting Va. Code Sec. 38.1-342.2 to mean "causally responsible" would require individual determination of fault in cases such as this. Because of the nature of the workers' compensation statute, we do not think those fears well founded. The Act is, of course, a no-fault statute. "Employer's liability is not based upon tort or other wrongful conduct on the employer's part, but because it is incident to the relationship of employer-employee and a part of employer's contractual liability under the Act." Fauver v. Bell, 192 Va. 518, 65 S.E.2d 575, 578 (Va.1951). See also Ray, Evans & Steele, Recovery for Accidental Injuries Under the Virginia Workmen's Compensation Act, 14 U.Rich.L.Rev. 659, 661 (1980). Since under the statute the employer always pays to treat work-related injuries regardless of fault, there will never be a need to determine the employer's causal responsibility, and the non-duplication provision in the health policy will be enforced as a matter of course