**In re Kidan H. GOODWIN, d/b/a Ashend International Restaurant, d/b/a Milano Fashion Shop, Debtor.**

**Bankruptcy No. IP89–8564 V.**

United States Bankruptcy Court,
S.D. Indiana,
Indianapolis Division.

April 12, 1990.

David J. Colman, Bloomington, Ind., for Harlans.

Alfred I. Towell, Bloomington, Ind., for debtor.

## ORDER DENYING DEBTOR'S MOTION TO AVOID LIEN AND GRANTING MOTION OF GEORGE AND MARIE HARLAN FOR RELIEF FROM STAY

RICHARD W. VANDIVIER,
Bankruptcy Judge.

This matter comes before the Court on the Motion to Avoid Lien filed on January 2, 1990, by the Debtor and on the Motion for Relief from Stay filed on January 5, 1990, by George and Marie Harlan ("the Harlans"). The matters were heard on February 20, 1990. The Court now denies the Motion to Avoid Lien and Grants the Motion for Relief from Stay for the following reasons.

1. The Harlans first leased to the Debtor, then contracted to sell to her under an "Offer to Purchase", certain property in Bloomington, Indiana, on which a restaurant was located. On December 7, 1988, the Debtor leased the restaurant business to Chom Yae Rollins ("Rollins"). A dispute arose and the Debtor brought suit against Rollins in Monroe Circuit Court, Cause No. 53 CO1 8903 CP 00258. The Harlans intervened in the action, seeking the Debtor's eviction and asserting claims for damages against the Debtor.

2. To retain the restaurant premises while the suit was pending, the Debtor executed and filed with the state court on June 20, 1989, a "Bond" in which she pledged that upon final judgment in favor of the Harlans, she would guarantee payment of up to $25,000.00, pledging as security her ownership interest in a business called the Milano Fashion Shop ("Milano"), which included inventory valued at $20,000.00, equipment valued at $10,000.00, and its value as a going concern. In answers to interrogatories filed July 21, 1989, the Debtor listed as part of Milano's inventory Morrocan leather valued at $1570.00, and as part of Milano's equipment an antique

china cabinet valued at $1200.00 and antique chairs valued at $700.00.

3. In its Judgment Entry of August 25, 1989, the court entered judgment in favor of the Harlans against the Debtor for $7620.97 for unpaid monthly payments and utility payment, and for $18,555.93 owing under the Offer to Purchase. If the Debtor did not close on the Offer to Purchase within 60 days, the offer would be null and void, the Harlans would be entitled to keep all monies paid by the Debtor as liquidated damages, and the Harlans would be authorized to proceed against the property pledged in the Bond. The court enjoined the Debtor from disposing of any of the property pledged under the Bond until the judgments had been paid in full. The Debtor did not close on the Offer to Purchase within the allotted time and failed to pay the judgments in favor of the Harlans.

4. The Debtor filed for relief under Chapter 7 of the Bankruptcy Code on November 17, 1989. In her schedules she lists the Harlans as a secured creditor with a claim of $18,555.00, and lists as exempt property a china cabinet and two antique chairs valued at $1900.00 and Morrocan leather valued at $1100.00. The Debtor admits that these items were subject to the Bond. In her Motion to Avoid Lien, she seeks to avoid the Harlans' lien on these items, asserting that it is a nonpossessory, nonpurchase-money security interest in household and personal goods avoidable under 11 U.S.C. section 522(f).

5. At the hearing, the Debtor seemed to have switched theories, asserting that the Harlans' lien was an avoidable judicial lien under 11 U.S.C. section 522(f)(1), rather than a nonpossessory, nonpurchase-money security interest avoidable under 11 U.S.C. section 522(f)(2). The Court will address both theories.

6. A debtor may avoid the fixing of a lien on property to the extent that the lien impairs an exemption to which the debtor would have been entitled, if the lien is a judicial lien, 11 U.S.C. section 522(f)(1), or if the lien is a nonpossessory nonpurchase-money security interest in certain types of items, including household furnishings and wearing apparel, that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor, 11 U.S.C. section 522(f)(2)(A).

7. A judicial lien means one "obtained by judgment, levy, sequestration or other legal or equitable process or proceeding." 11 U.S.C. section 101(32). A security agreement means "a lien created by agreement." 11 U.S.C. section 101(44). The Harlans did not obtain their lien on the items at issue by judgment of the state court, but by the Bond the Debtor gave earlier in the proceeding. The Debtor agreed to give the Bond to retain the restaurant premises during the state action. Although she might have felt compelled to agree to the Bond in order to protect her interests while the suit was pending, considerations of this type often compel debtors to agree to liens. Few debtors would give a creditor a security interest in their property if they could obtain the benefit they seek without doing so. The Harlans' lien, therefore, is a security interest, and the fact that the state court judgment later recognized the lien and empowered the Harlans to enforce it does not change its character to a judicial lien. *See In re Dunn,* 10 B.R. 385 (Bankr.W.D.Okla.1981) (judicial approval of property settlement agreement does not convert security agreement contained therein into a judicial lien); *In re Miller,* 8 B.R. 672 (Bankr.N.D.Iowa 1981) (foreclosure judgment does not convert mortgage lien into judicial lien). The Harlans' lien is therefore not avoidable under 11 U.S.C. section 522(f)(1).

8. The Debtor does not dispute that at the time she gave the Bond, the items at issue were used for business rather than for personal or household purposes. She could not avoid a nonpossessory nonpurchase-money security interest in items of that character. She argues that she can make the Harlans' security interest avoidable under section 522(f)(2)(A) by changing the character of the items after she gave them the security interest.

9. Certainly an item's character is not immutable. A table, for instance, could be inventory in a furniture store, equipment in

a place of business, or a household furnishing in a home. Such a change often occurs when the item changes hands in a commercial transaction. The issue is not whether the items in question have been transformed from business equipment and inventory into household furnishings and apparel, but whether the Debtor's prior acts and representations estop her from claiming that the items are of a different character than she had previously represented.

▮▮▮ 10. Under Indiana law, estoppel precludes a party from denying a fact settled by the party's own acts. 12 I.L.E. *Estoppel* section 1. The elements of equitable estoppel are (1) a false representation or concealment of material fact, (2) made with actual or constructive knowledge of the facts, (3) made to a party without knowledge or the means of knowledge of the real facts, (4) made with the intention that it be acted on and (5) acted on by the party to whom made to that party's prejudice. *Id.* at section 21. The doctrine rests on principles of equity, justice, and good conscience, and its purpose is to prevent fraud and injustice. *Id.* It is not necessary that the person estopped intends to defraud the other party at the time the representation is made, for the fraud consists in subsequently denying the representation to the injury of the party acting on it. *Id.* at section 22. Although representations concerning the future usually do not give rise to estoppel, such representations may support estoppel if to do otherwise would cause injustice. *Id.* at section 41. One who signs a bond and then obtains benefits under the bond is estopped from denying the truth of the recitals therein. *Id.* at section 5.

▮▮ 11. In the Bond, the Debtor gave the Harlans a security interest in the Milano's inventory and equipment, giving representations of their value, with the intent that the Harlans rely and act on the representations. The Harlans acted on these representations to their detriment by foregoing taking certain actions during the state court action. The items at issue were on display at the Milano at the time the Debtor gave the Bond, and the Debtor later confirmed in answers to interrogatories that the values represented included the items. The Court therefore concludes that the Debtor represented that the items at issue were equipment and inventory of the Milano and that the Harlans acted on this representation to their detriment.

12. Because the Debtor's representation that the items were equipment and inventory was true at the time made, and she made no explicit representation that she would not change their character in the future, her actions might not give rise to equitable estoppel if Indiana law were given a strict interpretation. Nevertheless, the Court concludes that equitable estoppel must apply as a matter of federal bankruptcy law to avoid injustice to creditors who detrimentally relied on these representations. Allowing a debtor to unilaterally change the character of the collateral to exempt household furnishings and apparel after representing it to be business equipment and inventory would upset the legitimate expectations of secured creditors. Such a creditor could no longer count on those representations or even its own inspection of a business's collateral, since equipment such as desks, filing cabinets and personal computers, and inventory such as clothing, housewares, and furniture, could be converted to household goods by the simply expedient of removing them from the business and using them in the home. This action, unlike a predictable commercial sale of the item, contributes nothing to the business but simply depletes the collateral against which a secured party can collect in the event of bankruptcy. A creditor taking a nonpossessory nonpurchase-money security interest in exempt household goods can be expected to take into account the risk of lien avoidance if the debtor later seeks relief in bankruptcy. However, a creditor taking a security interest in collateral explicitly represented by a debtor to be business equipment and inventory should not be expected to bear such a risk. The Court holds that the Debtor's prior representation that the items at issue were business equipment and inventory estops her from now claiming that they are exempt household furnishings and apparel,

and thus the Debtor cannot avoid the Harlans' security interest in them under section 522(f)(2)(A).

 13. The Court's holding is not premised on waiver, for it is clear that a debtor cannot be held to any waiver of exemptions or lien avoidance rights. *See* section 522(e) and (f). Waiver is the intentional and voluntary relinquishment of a known right and is determined solely from the conduct of the person with the right. 12 I.L.E. *Estoppel* section 30. Estoppel, on the other hand, is based on the misleading of a party entitled to rely on the acts or statements in questions and that party's consequent detrimental reliance. *Id.* The fact that a creditor cannot hold a debtor to a waiver of exemptions or lien avoidance rights does not mean that a debtor cannot be estopped from claiming those rights when a creditor has detrimentally relied on the debtor's prior representations about the nature of the collateral.

14. In their Motion for Relief from Stay, the Harlans request that their claim be corrected to add the judgment of $7620.97 and that they be relieved from the automatic stay so that they may fully pursue their collection remedies in state court. There is no need to correct of the amount of the Harlans' claim, at least not at this time. Since this case appeared at the time of filing to be a no asset case, creditors were directed not to file proofs of claim. The trustee has since determined this to be a no asset case. Since there are no assets to be distributed, the asserted understatement of the Harlans' claim is of no consequence. If the trustee later discovers assets to distribute, the Harlans will be given an opportunity to file a proof of claim, in which they can claim the amount they believe to be correct.

 15. Because the Debtor has no equity in the items at issue and they are not necessary for effective reorganization, the Court will modify the stay to allow the Harlans to proceed against their collateral. *See* 11 U.S.C. section 362(d).

The Court therefore DENIES the Debtor's Motion to Avoid Lien and GRANTS the Harlans' Motion for Relief from Stay to the extent it requests modification of the stay to allow the Harlans to proceed against their collateral.

SO ORDERED.