In re Tina L. CARPENTER, Debtor.

Wal–Mart Stores, Inc., Plaintiff,

v.

Tina L. Carpenter, Defendant.

Bankruptcy No. 98–26470–S.
Adversary No. 98–2190–S.

United States Bankruptcy Court,
E.D. Virginia,
Norfolk Division.

Jan. 18, 2000.

Eugene E. Derryberry, Roanoke, VA, for Wal–Mart.

Carolyn M. Camardo, Portsmouth, VA, for Tina L. Carpenter.

### Amended Memorandum Opinion & Order

STEPHEN ST. JOHN, Bankruptcy Judge.

This matter comes on for hearing on the request of the Plaintiff, Wal–Mart Stores, Inc. ("Wal–Mart"), for a declaratory judgement and prayer for monetary relief. Wal–Mart seeks a declaration from this Court that it has an equitable lien against certain proceeds now held by the debtor, Tina L. Carpenter ("Carpenter"). Carpenter received the proceeds from a settlement of a personal injury claim she had against a third party. Wal–Mart further asks this Court to order Carpenter to repay Wal–Mart amounts Wal–Mart had paid in benefits on Carpenter's behalf. Having considered the evidence presented at trial, the Court makes the following findings of fact and conclusions of law.

### Findings of Fact

The parties have stipulated to virtually all of the facts necessary for resolution of this dispute. Carpenter was formerly an employee of Wal–Mart and participated in

the Wal–Mart Group Health Plan ("Plan"). (Stip. of Facts ¶ 1.) Wal–Mart, acting through its administrative committee, is the plan sponsor and administrator. (Stip. ¶ 2.) The Plan is a self-funded, self-insured health benefits plan and is governed by the provisions of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, et seq. ("ERISA"). (Stip. ¶ 3.)

The Plan pays health benefits to a plan participant in instances in which a third party's acts injure the participant. By its terms, if the Plan pays benefits on behalf of a participant due to such an injury, the Plan retains the right of subrogation to the participant's claims against such third-party, and the right to reimbursement for the participant's recoveries from such third-party. (Stip. ¶ 4.) The rights of subrogation and reimbursement apply regardless of whether such payments are designated as payment for, but not limited to, pain and suffering, medical benefits, other specified damages, or whether the participant has been made whole (i.e. fully compensated for his or her injuries). (Stip. ¶ 5.)

On November 13, 1994, a third party caused a car accident in which Carpenter was injured. (Stip. ¶ 6.) On July 6, 1995, Carpenter executed a Subrogation Rights Notification Acknowledgment ("Acknowledgment") in which Carpenter represented that she had read the provisions of the Plan relating to "reimbursement, reduction and/or subrogation." (Stip. ¶ 7.) After Carpenter executed the Acknowledgment, Wal–Mart, pursuant to the terms of the Plan, commenced paying benefits on the debtor's behalf for injuries she had sustained as a result of the accident. As of September 1, 1998, the date Carpenter filed a voluntary Chapter 7 Bankruptcy Petition, Wal–Mart had paid $106,935.11 in benefits. (Stip. ¶ 8.) On October 13, 1998, Carpenter recovered $125,000.00 as a result of a settlement of her personal injury claim against the third party whose acts caused her injuries. (Stip. ¶ 9.) In her amended schedules, Carpenter claimed the proceeds of her personal injury suit as exempt property pursuant to 11 U.S.C. § 522(b)(2) and Virginia Code § 34–28.1.

At trial, Carpenter testified that she had been limited to a recovery of $125,000.00 against the third-party tortfeasor because that sum represented the extent of the insurance policy limits available to satisfy her claim. (Testimony of Carpenter at 5.) Carpenter's right hand was crushed in the accident and she has underwent nine surgeries in order to reconstruct the hand. (Testimony of Carpenter at 3.) Carpenter displayed her hand for the benefit of the Court, id., and, based upon this examination, it is undisputable that she has sustained an extremely serious injury.

Carpenter further explained that the sole reason for her filing her Chapter 7 bankruptcy petition was the result of the medical bills she sustained as a result of her accident. (Testimony of Carpenter at 4–5.) Carpenter referred to her bankruptcy schedules, which reflect medical expense claims of nearly $300,000.00. (Testimony of Carpenter at 3.) The sole claim reflected on her schedules, other than for medical claims relating to her accident, is a claim resulting from credit card usage in the approximate amount of $3,500.00. Id. Carpenter has retained in her control approximately $83,000 in cash. This money represents the $125,000.00 in settlement proceeds less the attorneys fees and costs subtracted from the proceeds and paid to the attorney who represented Carpenter in her personal injury claim. (Testimony of Carpenter at 6–7.)

Wal–Mart filed the Complaint in this case on November 25, 1998. In its Complaint, Wal–Mart asserts that, under the terms of the Plan, it is entitled to assert an equitable lien against the settlement proceeds notwithstanding entry of a discharge in the debtor's Chapter 7 bankruptcy, and is entitled to be reimbursed to the extent of the settlement proceeds. Wal–Mart asserts that it is entitled to such a lien notwithstanding Virginia Code § 38.2–3405, which prohibits the enforcement of

subrogation and reimbursement provisions contained within a health insurance contract. Wal–Mart claims that the Virginia statute is pre-empted by the provisions of ERISA. Wal–Mart further posits that this lien is not avoidable in bankruptcy and requests that the Court order the debtor to pay over to Wal–Mart the settlement proceeds the debtor had received up to the amount that the debtor had received from Wal–Mart.[1]

The defendant denies that the plaintiff has a right to an equitable lien and asserts that the proceeds are exempt pursuant to Section 34–28.1 of the Virginia Code, made applicable by 11 U.S.C. § 522. Defendant further argues that the public policy reflected in the enactment of Virginia's anti-subrogation statutes denies the creditor the right to recover the settlement proceeds via an equitable lien.

This court has jurisdiction over this proceeding pursuant to 28 U.S.C. § 1334. In its Complaint, Wal–Mart asserts that this is a non-core proceeding. Wal–Mart is mistaken in this regard, however. 28 U.S.C. § 157(b)(2) provides a non-inclusive list of matters considered as core proceedings. Pursuant to Section 157(b)(2)(K), a proceeding to determine the validity, extent, or priority of a lien is a core proceeding. The current proceeding is a core proceeding because Wal–Mart, in asking the court to determine whether it has a equitable lien, has commenced a proceeding to determine the validity and extent of the lien. 28 U.S.C. § 157(b)(2)(B) also provides that allowance of exemptions from property of the estate are considered core proceedings. This matter is a core proceeding, additionally, because the Court is being asked to determine the extent to which the debtor has a valid exemption.

**I. Wal–Mart's Right to an Equitable Lien**

In order to establish whether Wal–Mart is entitled to an equitable lien, it is necessary to analyze the effect that ERISA has on both the Plan's provisions and state law. Congress enacted ERISA in order to establish a comprehensive statutory scheme to govern employee benefit plans. *See Phoenix Mutual Life Ins. Co. v. Adams*, 30 F.3d 554, 558 (4th Cir.1994). As such, ERISA's provisions preempt all state laws that "relate to" all employee benefit plan. *See* 29 U.S.C. § 1144(a) (1994). ERISA contains a provision, the "savings clause," that states that ERISA's provisions do not apply to any state law which regulates insurance. *See id.* (b)(2)(A). Yet another provision, however, the "deemer clause," further provides that an employee benefit plan shall not be deemed to be an insurance company for purposes of any State law proporting to regulate insurance. *See id.* (b)(2)(B).

The parties have stipulated that the Plan is a self-funded, self-insured employee benefit plan of a type that ERISA governs. As a result, the deemer clause applies to the Plan and the Plan is not exempt from ERISA under the savings clause. *See FMC Corp. v. Holliday*, 498 U.S. 52, 60–61, 111 S.Ct. 403, 112 L.Ed.2d 356 (1990). Thus, any state law that "relates to" the Plan at issue is preempted by ERISA.

**A. ERISA Preempts Virginia's Anti-subrogation Statute.**

■ The Supreme Court firmly established that a state's anti-subrogation law may relate to and may be pre-empted under ERISA in *FMC*. In that case, an employer operating a self-funded health care plan sought a declaratory judgment that it was entitled to subrogation for amounts it had paid for medical expenses

---

1. Wal–Mart's Complaint also contained counts seeking a declaration that its indebtedness was nondischargeable under § 523(a)(2)(a) and (a)(6) of the Bankruptcy Code. Upon the sworn testimony of Carpenter that she has retained all of the proceeds from her settlement of her claim, less the amount she paid in attorneys' fees, and the representation that she would not dispose of the same pending the Court's resolution of this proceeding, Wal–Mart voluntarily dismissed these counts.

of an employee's daughter. *See id.* at 55. The employer sought this notwithstanding a Pennsylvania law which stated that an employer had no right of subrogation or reimbursement from a claimant's tort recovery with respect to workers' compensation benefits. *See id.* at 55 n. 1. The district court granted summary judgment in favor of the respondent and the United States Court of Appeals for the Third Circuit affirmed, stating that the deemer clause did not apply because Pennsylvania's anti-subrogation law addressed "a core type of ERISA matter which Congress sought to protect by the preemption provision." *See id.* at 56.

The Supreme Court reversed. In its opinion, the Court noted that ERISA's preemption clause "is conspicuous for its breadth" and applies not just to state laws specifically designed to affect employee benefit plans, but to every state law that "relates to" an employee benefit plan governed by ERISA. *See id.* at 58–59. The Court found that Pennsylvania's antisubrogation law related to an employee benefit plan under ERISA's definition because it contained a reference to the types of benefit plans governed by ERISA; furthermore, the Court found that the statute had a connection to ERISA-governed benefit plans because application of the Pennsylvania law would apply a differing set of state regulations that would complicate the administration of nationwide plans. *See id.* at 59–60. Based on these findings, the Court held that the Pennsylvania law had been preempted by ERISA and, as a result, the state statute did not apply to the employee benefit plan at issue. While the Court found that the Pennsylvania statute fell within ERISA's insurance savings clause, the Court also found that the deemer clause exempted self-funded ERISA

plans from state laws that fall within the savings clause. *See id.* at 60–61. As a result, the Court held that the plan at issue was not subject to Pennsylvania's anti-subrogation law.

Virginia's anti-subrogation statute is substantively very similar to the Pennsylvania statute the Supreme Court found to be pre-empted in *FMC.*[2] Virginia's Anti-Subrogation Law states, in relevant part:

A. No insurance contract providing hospital, medical, surgical and similar or related benefits, and no subscription contract or health services plan delivered or issued for delivery or providing for payment of benefits to or on behalf of persons residing in or employed in this Commonwealth shall contain any provision providing for subrogation of any person's right to recovery for personal injuries from a third person.

B. No such contract, subscription contract or health services plan shall contain any provision requiring the beneficiary of any such contract or plan to sign any agreement to pay back to any company issuing such a contract or creating a health services plan any benefits paid pursuant to the terms of such contract or plan from the proceeds of a recovery by such a beneficiary from any other source. . . .

Va.Code Ann. § 38.2–3405(a) & (b) (Michie 1999). Like Pennsylvania's statute, Virginia's anti-subrogation law makes references to the types of plans governed by ERISA as it prohibits the enforcement of subrogation and reimbursement provisions in subscription contracts and health services plans. *See id.* Likewise, Virginia's anti-subrogation law has the same connection to ERISA as the Pennsylvania law in

---

**2.** The Pennsylvania statute the Court analyzed in *FMC* states that "[i]n actions arising out of the maintenance or use of a motor vehicle, there shall be no right of subrogation or reimbursement from a claimant's tort recovery with respect to . . . benefits . . . paid or payable under section 1719." 75 Pa.Cons.Stat. § 1720 (1987). Section 1719 refers to "[a]ny

program, group contract or other arrangement for payment of benefits." These terms "includ[e], but [are] not limited to, benefits payable by a hospital plan corporation or a professional health service corporation." *Id.* § 1719. *See FMC,* 498 U.S. at 59, 111 S.Ct. 403.

that it imposes on benefit plans regulated by the statute a regulatory scheme that is not employed by other states. *See FMC,* 498 U.S. at 59, 111 S.Ct. 403 ("To require plan providers to design their programs in an environment of differing state regulations would complicate the administration of nationwide plans, producing inefficiencies that employers might offset with decreased benefits ... Application of differing state subrogation laws to plans would frustrate plan administrators' continuing obligation to calculate uniform benefit levels nationwide"). As a result, Virginia's Anti–Subrogation and Anti–Reimbursement law similarly "relates to" an employee benefit plan pursuant to 29 U.S.C. § 1144(a) and is therefore preempted by ERISA.

B. Wal–Mart's Entitlement to an Equitable Lien under Federal Common Law.

■ When it is determined that state law is preempted, a court must look to the provisions of ERISA to see whether any apply. Where, as here, ERISA is silent on the matter, *see Walker v. Rose,* 22 F.Supp.2d 343, 351 (D.N.J.1998) ("[E]RISA says nothing about subrogation/reimbursement provisions"), a court may develop federal common law in order to fashion appropriate rights and remedies under ERISA-regulated plans. *See Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 110, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989); *Phoenix,* 30 F.3d at 561; *Singer v. Black & Decker,* 964 F.2d, 1449, 1452 (4th Cir.1992). The Fourth Circuit Court of Appeals has repeatedly admonished that a court should fashion federal common law remedies sparingly, however:

> [T]he resort to federal common law generally is inappropriate when its application would: 1) conflict with the statutory provisions of ERISA; 2) discourage employers from implementing plans governed by ERISA; or 3) threaten to override the explicit terms of an established ERISA benefit plan. [citation omitted] We have also suggested that courts "should remain circumspect to

utilize federal common law to address issues that bear at most a tangential relationship to the purposes of ERISA." [citation omitted].

*Phoenix,* 30 F.3d at 563; *accord Singer,* 964 F.2d at 1452.

■ Wal–Mart asserts that, because Virginia's anti-subrogation law is preempted by ERISA, the Court should impose an equitable lien on the debtor's proceeds based on the state common law of Virginia. Wal–Mart asserts that the expression of Virginia common law, as it existed prior to the enactment of Virginia's anti-subrogation law, is articulated by the Virginia Supreme Court in *Collins v. Blue Cross,* 213 Va. 540, 193 S.E.2d 782 (1973). Decided before both the enactment of Virginia's current anti-subrogation law and ERISA, the Virginia Supreme Court in *Collins* held that an insurance provider was entitled to the imposition of an equitable lien against a plan participant's proceeds in a fund obtained from a third-party tortfeasor.

Plaintiff's assertion that the *Collins* decision compels, in and of itself, the Court to find an equitable lien is erroneous. Wal–Mart is incorrect in its assertion that, upon finding that ERISA has preempted state statutory law, the Court is compelled to apply solely the underlying state common law in fashioning a decision. ERISA does not preempt only the statutory law of the state, but instead preempts the state's entire law as it "relates to" covered benefit plans. *See Phoenix,* 30 F.3d at 563; *Provident Life & Accident Ins. Co. v. Waller,* 906 F.2d 985, 989–90 (4th Cir.1990). While state law that is preempted may be relied upon to fashion an appropriate remedy, the Fourth Circuit Court of Appeals admonishes that such reliance must be used sparingly and "state rights and remedies that are expressly preempted under ERISA may not be resuscitated as federal common law claims without an exacting examination of whether ERISA permits such a result." *Phoenix,* 30 F.3d at 564 n.

22 (quoting *Singer,* 964 F.2d at 1453 (Wilkinson, J. concurring)). Thus, before determining whether *Collins* applies, the Court must determine whether it is appropriate to impose a federal common law remedy at all. Only then should the Court determine whether it should use state common law and whether it is appropriate to apply *Collins* in this circumstance.

■ Looking at the circumstances governing this particular case, the Court is of the opinion that it is appropriate to impose an equitable lien on the proceeds of the debtor's recovery as a matter of federal common law. As previously noted, ERISA is silent as to the subject of equitable liens and imposing such a lien would not conflict with any of ERISA's statutory provisions. Furthermore, imposing an equitable lien would not discourage employers from implementing ERISA plans; on the contrary, the imposition of an equitable lien would encourage employers to implement such plans because the availability of such a remedy better ensures recovery of plan proceeds when the employer explicitly contracts for a right to reimbursement under the plan.

The question of whether the imposition of an equitable lien in this case would threaten to override the explicit terms of the ERISA benefit plan requires closer scrutiny. Wal–Mart has not submitted evidence that the terms of the plan gave Wal–Mart the right to impose an equitable lien in any proceeds that Carpenter had recovered from third parties. The only evidence before the Court is that the plan provided for the right to reimbursement and subrogation in the event that Carpenter made a recovery and that Carpenter had acknowledged that Wal–Mart had those rights as evidenced by her signature on the Subrogation Rights Notification Acknowledgment. The issue is therefore whether the imposition of an equitable lien would override the agreement between the parties to the extent that such a remedy should not be imposed as a matter of federal common law.

■ The Supreme Court has recently adopted a definition of equitable lien in *Department of the Army v. Blue Fox, Inc.,* 525 U.S. 255, 119 S.Ct. 687, 692, 142 L.Ed.2d 718 (1999). In that case, the Court noted that an equitable lien "does not give the plaintiff the very thing to which he was entitled [citation omitted] ... instead, it merely grants a plaintiff a security interest in the property, which [the plaintiff] can then use to satisfy a money claim [internal quotation marks omitted]." *Id.* (quoting 1 D. Dobbs, Law of Remedies § 4.3(3), p. 601 (2d ed.1993)). An equitable lien is akin to a constructive trust in that the imposition of the lien is not of particular significance in and of itself, but is "merely a means to the end of satisfying a claim for the recovery of money." *Department of the Army,* 525 U.S. 255, 119 S.Ct. at 692. Usually, an equitable lien is imposed in instances where unjust enrichment would otherwise result. *See id.* Unjust enrichment need not always be present, however, for a court to impose an equitable lien; an equitable lien may also arise from a written contract which shows an intention to charge some particular property with a debt or obligation. *See Klesch & Co. v. Nauru Phosphate Royalties, Inc. (In re "Ronfin" Series C Bonds Sec. Interest Litig.),* 182 F.3d 366, 371 (5th Cir.1999); *First Union Commercial Corp. v. Nelson, Mullins, Riley & Scarborough (In re Varat Enter., Inc.),* 81 F.3d 1310, 1319 (4th Cir.1996) (applying South Carolina Law); *Skip Kirchdorfer, Inc. v. United States,* 6 F.3d 1573, 1581 (Fed.Cir.1993); *Jamison Coal & Coke Co. v. Goltra,* 143 F.2d 889, 893 (8th Cir.1944); *In re Texas State Optical, Inc.,* 188 B.R. 552, 555 (Bankr.E.D.Tx.1995), *In re Doyen,* 56 B.R. 632, 633–34 (Bankr.D.S.D. 1986); 51 Am.Jur.2d *Liens* § 25 (1964 & Supp.1999) (citing cases). Strict proof of such intention is required. *See In re Ronfin,* 182 F.3d at 371; *Cherno v. Dutch American Mercantile Corp.,* 353 F.2d 147 (2d Cir.1965); *Hassett v. Revlon, Inc. (In*

*re O.P.M. Leasing Services, Inc.),* 23 B.R. 104, 119 (Bankr.S.D.N.Y.1982).

By its nature, imposing an equitable lien in this case would not override the agreement between the parties. While it cannot be ascertained from the record whether the terms of the Plan specifically call for the imposition of an equitable lien, the parties agreed by the written terms of the Plan that Wal–Mart would have the right to reimbursement and subrogation of any proceeds that Carpenter recovered from a third-party tortfeasor. In contracting for the right to reimbursement, Carpenter evidenced an intent to charge particular property, namely the proceeds of any subsequent recovery she would receive, with a particular obligation, namely the obligation to repay amounts paid out by Wal–Mart under the Plan. Carpenter further evidenced her assent to that provision by subsequently signing the Acknowledgment. Carpenter challenges neither the authenticity or validity of the Plan or the Acknowledgment.

The combination of the Plan's provisions and the Acknowledgment's execution is strict proof of the parties' intent to charge the proceeds of her recovery with the obligation to repay the medical expenses Wal–Mart lent on her behalf. Therefore, the imposition of an equitable lien not only does not contradict the parties agreement, but is fully consistent with the express written terms of the Plan. The imposition of an equitable lien under these circumstances merely allows the creditor, Wal–Mart, a vehicle for recovery when such recovery was contemplated by the two parties as evidenced by the agreed right to reimbursement given to Wal–Mart under the terms of the Plan.

Because the imposition of an equitable lien would not contradict any of ERISA's statutory provisions, would not discourage an employer from implementing an ERISA-governed plan, and would not threaten to override the explicit terms of the Plan at issue, it is appropriate for the Court to recognize an equitable lien on the debtor's proceeds as a matter of federal common law. Therefore, the Court finds that Wal–Mart has an equitable lien on the proceeds of Carpenter's recovery in the amount that Wal–Mart paid out to Carpenter under the Plan in order to cover her medical expenses.

In coming to this conclusion, the Court has looked to other case precedents to determine whether it is appropriate to recognize an equitable lien under the circumstances. As noted, *supra*, an equitable lien may be obtained either as a remedy for unjust enrichment or if evidence exists that the parties intended to create such a lien. While several courts, both federal and state, similarly articulate the applicable test as to when an equitable lien should be imposed and there appears to be little variance among the Circuits as to the test's appropriate formulation, the Court was unable to find many cases in which the request for an equitable lien arises under similar factual circumstances.

The cases which the Court has found with similar factual circumstances impose an equitable lien on a finding that unjust enrichment would otherwise result. In *Provident,* the court did not impose an equitable lien, per se, but found that a common law rule of unjust enrichment was permitted in conjunction with an ERISA plan administrator's action to recover money from a plan participant. In that case, the defendant was a participant is a self-funded employee benefit plan administered by the plaintiff. *See Provident,* 906 F.2d at 986. The Plan paid life, medical, and disability benefits to or on behalf of plan participant, but in instances where a third party caused a covered injury or illness, the Plan provided that: "[P]ayment for medical care expenses … may be advanced by [plaintiff] Provident. For this to happen, the covered person must sign an agreement to repay the … Plan in full any payments advanced … from the judgment he or she receives …" *Id.*

The defendant was injured in a car accident and the plaintiff advanced the defendant medical expenses without obtaining a repayment agreement. The defendant later recovered for the accident, but refused to repay the plaintiff. *See id.* at 987. The plaintiff sued under ERISA for recovery of the monies and the defendant filed a counterclaim asking for a declaratory judgment that the proceeds were exempt under Virginia Code § 38.2–3405 and that reimbursement was precluded. The district court found that ERISA preempted the exemption statute, but that the plaintiff was barred from recovery because it had failed to obtain the defendant's signature for the repayment provision. *Id.*

The Fourth Circuit Court of Appeals reversed. In its opinion, the court reasoned that fashioning an unjust enrichment remedy as a matter of federal common law is appropriate under the circumstances of the case. *See id.* at 992. The court found that imposition of such remedy was appropriate because the plan contract in the case provided for repayment of the monies advanced. *See id.* at 993. The court stated that creation of such a common law remedy would further the contract between the parties and effectuate the clear intent of the plaintiff's subrogation/reimbursement clause. *See id.* Further, the court reasoned that ERISA's provision demonstrated "a desire to ensure that plan benefits are administered equally and that no one party, not even plan beneficiaries, should unjustly profit." *Id.* The court also noted that the defendant had received a double recovery despite awareness of the plan's reimbursement provisions and that the plaintiff was also entitled to recover under a quantum me-

ruit theory. *See id.* The court, after finding the equitable remedy of unjust enrichment could be imposed under ERISA, reversed the case and found for the plaintiff.

The Virginia Supreme Court in *Collins* employed similar reasoning under a similar set of facts to impose an equitable lien. To the extent that the common law as articulated in *Collins* is substantively similar to the common law employed in *Provident*, it appears that *Collins'* holding may be used to point to an appropriate federal common law remedy without fear of either attempting to smuggle state common law principles into federal common law or undermining the policies governing ERISA.[3]

In *Collins*, the court held that the effect of a subrogation provision in a group insurance contract was to impose an equitable lien on behalf of the plan provider against the participant's fund from a third-party tortfeasor for amounts advanced on behalf of the plan participant pursuant to the terms of the insurance contract. In this case, decided before ERISA was promulgated, Collins was injured in a car accident. Through her employer, Collins had an insurance contract with Blue Cross and Blue Shield of Virginia. *See Collins*, 213 Va. at 541, 193 S.E.2d 782. The contract contained a subrogation clause within it that stated: "In the event of any payment for services under this Contract, the [insurance company] shall, to the extent of such payment, be subrogated to all rights of recovery of the participant." *Id.* at 542, 193 S.E.2d 782. Blue Cross paid $2,584 in medical bills on behalf of Collins. *See id.* at 541, 193 S.E.2d 782. Collins brought an action against a third-party tortfeasor and collected $7,000 in settlement. Blue Cross

---

**3.** It appears that, in general, Virginia's formulation as to when it is appropriate to impose an equitable lien is substantively identical to the formulation employed by a majority of Federal Courts. *See* 12A Michie's Jurisprudence of Va. and W.Va. § 6 *Liens* (1989) ("An equitable lien arises either from a written contract which shows an intention to charge some particular property with a debt or obli-

gation or is declared by a court out of general considerations of right and justice as applied to the relations of the parties and the circumstances of their dealings."). *See also id.* (citing cases) This similarity gives the Court some ability to rely on the Virginia common law provided the holdings in the relied upon cases do not contradict ERISA's purposes.

sued to recover the $2,584 after Collins had recovered from the third party. *See id.* The trial court ruled that the insurance company could not enforce its subrogation provision, but was entitled to a statutory lien, subject to certain statutorily imposed limits on monetary recovery. *See id.*

The Virginia Supreme Court reversed. In its opinion, the court reasoned that a contracted right of subrogation was akin to recognizing that the purpose of the contract was indemnity. *See id.* at 542, 193 S.E.2d 782.[4] Likewise, the court found that the effect of the subrogation provision was to impress an equitable lien on the subsequent recoveries of the participant. *See id.* at 543, 193 S.E.2d 782. The court reasoned that failure to impose such a lien constituted unjust enrichment by allowing the plan participant to, in effect, the doubly compensated. *See id.* at 543–46, 193 S.E.2d 782.

While the Court principally relies, in the present case, on the fact that the Plan demonstrates the parties' intent to have particular property charged with a particular obligation, thus giving rise to the equitable lien, the holdings in *Provident* and *Collins* also support such a finding based on unjust enrichment grounds as well. As in the Plan currently at issue, the plan language in both cases evidenced an intent to obligate the insured party to repay proceeds paid by the insurer on the insured's behalf. While the Court in *Provident* did state that the imposition of a common law remedy under the terms of the plan "would further the contract between the parties and effectuate the clear intent [of the plan's language]," *Provident*, 906 F.2d

at 993, both cases held that an equitable remedy was appropriate because the insured would otherwise receive a double recovery. While it is clear, in the present case, that Carpenter has not to the least extent been made whole for her injuries, allowing her to retain the settlement proceeds she has received while, at the same time, allowing her to not repay Wal–Mart as she has contracted would, in essence, allow her a double recovery. Both *Provident* and *Collins* state that such a double recovery is generally inequitable, regardless of whether the insured has been made completely whole via settlement. *See id.; Collins*, 213 Va. at 543, 193 S.E.2d 782. The holdings in both these cases therefore support the recognition of an equitable lien in the present case on unjust enrichment grounds as well.

In finding that Wal–Mart is entitled to an equitable lien as a matter of federal common law, the Court is cognizant of the admonitions of the Fourth Circuit Court of Appeals about when federal common law remedies should be fashioned, especially its warning that courts should not use federal common law to address issues that bear only a tangential relationship to ERISA's purposes. The imposition of an equitable lien in this case directly relates to the policies underlying ERISA.

The policies the court in *Provident* found militated in favor of finding an unjust enrichment remedy as a matter of federal common law also exist in this case and support the recognition of an equitable lien. In *Provident*, the court found that the creation of a common law remedy would give effect to the agreement be-

---

4. The court's notion of subrogation in *Collins* was that a subrogation arising by operation of law was different than a subrogation arising from contract—otherwise known as "conventional subrogation." *See Collins*, 213 Va. at 542, 193 S.E.2d 782. From the opinion, it appears that the court considered subrogation arising out of law to operate as typically conceived: "Typically, subrogation in the tortfeasor context involves the insurer stepping into the shoes of the insured and attempting to

recover from the third party who caused the injury." *Provident*, 906 F.2d at 990 n. 7 (quoting 16 Couch on Insurance 2d § 61:172 (Rev. ed.1983)). On the other hand, it appears that the court in *Collins* believed that subrogation arising from contract also contains within it a notion of recovery against the insured akin to the right to reimbursement at issue in the present case. *See Collins*, 213 Va. at 542, 193 S.E.2d 782.

tween the parties, and that imposing such a remedy was necessary to prevent double recovery by the insured. Giving effect to the agreement between the two parties, absent applicable law under the ERISA statute, is a central policy of ERISA as evidenced by ERISA's broad preemption provisions which generally prevent state law from altering the terms of plans. Allowing the Plan's provisions their full effect is an important element in efficient plan administration. *See Provident,* 906 F.2d at 993–94. Recognizing an equitable lien in the present case similarly gives effect to the intent of the contracting parties.

Preventing double recovery is also essential to ERISA's goal of encouraging employers to promulgate employee benefit plans. As the court in *Provident* noted, failure to prevent a double recovery "would discourage some employers from operating ERISA qualifying plans. It thus furthers the purposes of ERISA to recognize [a cause of action for unjust enrichment.]" *Id.* at 993 (internal quotation marks and citation omitted). Likewise, finding that an equitable lien may be recognized when the parties have a contracted right to reimbursement provides no disincentive for employers to advance funds under these self-funded employee benefit plans as it insures that employers know they have a vehicle for recovery if the insured refuses to repay the money. As such, finding that an equitable lien may be imposed as a matter of federal common law furthers ERISA's goals of encouraging employers to promulgate employee benefit plans.

## II. Applicability of Exemption

Carpenter asserts that, notwithstanding the existence of a valid lien, the debtor's proceeds are exempted from such a lien pursuant to Virginia Code § 34–28.1 as incorporated into the Bankruptcy Code's exemptions pursuant to 11 U.S.C. § 522. Under Section 522 of the Bankruptcy Code, a debtor may exempt from property of the estate certain types of property in varying amounts. Section 522(d) lists the types and amounts of property that may be exempted under federal law and Section 522(b)(1) also allows the debtor to take, alternatively, the exemptions provided under state law. Section 522(b)(1) permits a state to "opt out" of the federal exemption scheme and permit a debtor only the exemptions listed under state law. Virginia has enacted legislation prohibiting domiciliary debtors from taking the federal exemptions, but has provided its own set of exemptions.

The Virginia exemption provides, in relevant part:

> **Personal injury and wrongful death actions exempt**—... [A]ll causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement shall be exempt from creditor process against the injured person.... It shall not be required that a household designate any property exempt under this section in a deed in order to secure such exemption.

Va.Code Ann. § 34–28.1 (Michie 1996). Elsewhere in the code, "creditor process" is defined as "all methods used by creditors to collect unsecured debts." *Id.* § 34–1.

Without reaching the issue of whether ERISA preempts Virginia's exemption statute, Carpenter's claim that the statute exempts proceeds from Wal–Mart's lien fails by the statute's own terms. As previously stated, an equitable lien essentially grants a security interest in a particular *res* —here the debtor's proceeds. As a result, the creditor has the right to exercise remedies on the proceeds as a secured lienholder. Because the Virginia exemption statute only applies, by virtue of Section 34–1, to the efforts of creditors at exercising process against unsecured debts, the statute does not apply in instances, such as here, where the lienholder is deemed secured.

Carpenter's argument that the Virginia exemption statute evidences, as a matter

of public policy, an intent by the Virginia State Legislature to prohibit recovery of personal injury and wrongful death awards from creditors is also not supported by the statute. By defining creditor process to mean only attempts to recover unsecured debts, the legislature clearly showed an intent to allow secured creditors the ability to exercise their full rights under state law. Thus, public policy also does not prevent Wal–Mart from exercising the remedies it has as a secured creditor as a result of possessing an equitable lien.

### III. Payment of Proceeds

In its complaint, Wal–Mart requested not only that the Court recognize that the company possessed an equitable lien, but also that the Court order the debtor to pay over to Wal–Mart the settlement proceeds the debtor had received up to the amount that Wal–Mart had paid out in benefits. Wal–Mart asserts that it is entitled to receive payment because its equitable lien cannot be avoided in bankruptcy.

In her amended schedules, Carpenter claimed the proceeds of her personal injury suit as exempt pursuant to Virginia Code § 34–28.1. As noted, *supra*, Section 34–28.1 exempts all causes of action for personal injury or wrongful death and the proceeds derived from court award or settlement. By definition, the Virginia exemption protects such proceeds from unsecured creditor process, but does not prevent a secured creditor from exercising its rights under state law. It appears to the Court that the debtor properly exempted the proceeds of her personal injury suit pursuant to Section 34–28.1 and such property is exempt property to the extent that unsecured creditors may not take action to recover the proceeds.

 Under Section 522(f) of the Bankruptcy Code, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent such lien impairs an exemption if such a lien is a judicial lien. *See* 11 U.S.C. § 522(f) (1994). Therefore, if an equitable lien impairs an exemption and is considered a judicial lien,

the lien is avoidable and the debtor could bring an action to avoid it. Based on the analysis the Court has made regarding the extent to which Section 34–28.1 exempts Carpenter's proceeds, the Court believes that Wal–Mart's lien does not impair the exemption and is therefore not avoidable. By its terms, Section 34–28.1 only exempts the debtor's proceeds from creditor process on unsecured debts. In recognizing that Wal–Mart has an equitable lien, the Court is recognizing Wal–Mart's security interest in the proceeds. Thus, even though Carpenter has properly exempted the proceeds pursuant to Section 34–28.1 from unsecured creditor process, the proceeds are not properly exempted from Wal–Mart's lien and the lien is not avoidable by Carpenter's exemption. *See Webb v. Boroughs (In re Webb)*, 49 B.R. 646, 649 (Bankr.E.D.Va.1984) (holding debtor must properly claim exemption in property in order to avoid lien).

 Even if Wal–Mart's lien impaired the exemption, it is not avoidable because it is not a judicial lien. Wal–Mart asserts that the lien is not a judicial lien because the lien was not created by the docketing of a judgment against the debtor and that the Court is merely recognizing that a lien existed prior to the commencement of any judicial action. Carpenter did not articulate a position as to whether the lien was a judicial lien either in her briefs or through her counsel's argument at the hearing. The Court agrees with Wal–Mart's contention that the equitable lien the Court has recognized is not a judicial lien, but is a recognition of a previously existing lien.

The Bankruptcy Code defines a "judicial lien" as a "lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(32). There is substantial disagreement in the case law as to whether an equitable lien constitutes a judicial lien for the purposes of Section 522(f). One line of cases reasons that an equitable lien is merely the recognition of a security inter-

est that existed prior to judicial proceeding. *See In re Donahue*, 862 F.2d 259, 265 (10th Cir.1988); *In re Goodwin*, 133 B.R. 141, 143 (Bankr.S.D.Ind.1990); *see also Farrey v. Sanderfoot (In re Sanderfoot)*, 899 F.2d 598, 602 n. 14 (7th Cir.1990) (citing cases) *overruled on other grounds*, 500 U.S. 291, 111 S.Ct. 1825, 114 L.Ed.2d 337 (1991). Another line of cases, however, reasons that equitable liens are obtained by judgment and rely on judicial process to create a security interest in particular property where one did not previously exist. As such, an equitable lien is a lien "obtained by judgment" and a judicial lien under the statute. *See In re Sanderfoot*, 899 F.2d at 604–05; *In re Pederson*, 78 B.R. 264, 267 (9th Cir. BAP 1987); *see also Boyd v. Robinson*, 741 F.2d 1112, 1114 (8th Cir.1984) (Boyd, J. dissenting).

In analyzing these two lines of cases, it appears that the dispositive inquiry that the courts make in determining whether or not an equitable lien is a judicial lien is whether the court believes it is creating a lien which was not previously contemplated by previous agreement of the parties for the purposes of preventing unjust enrichment or if the court instead believes that it is "filling the gaps" and giving effect to an agreement made between parties. For example, in *In re Donahue*, the Tenth Circuit Court of Appeals distinguished a case, *Maus v. Maus*, which had stated that an equitable lien that had arisen out of a divorce decree was an equitable lien, by stating:

> The critical difference between this case and Maus is that the terms of the divorce decree in Maus explicitly awarded the property [on which the court subsequently imposed an equitable lien] to the debtor spouse "free and clear" of any claims of the nondebtor spouse. In our case, by contrast, the divorce decree itself clearly contemplated the creation of a lien or security interest of some kind in favor of [the non-debtor spouse] and against the Property.

*In re Donahue*, 862 F.2d at 265. *See also In re Sanderfoot*, 899 F.2d at 603 (contrasting different theories as to circumstance in which equitable lien arises).

In the case of Wal–Mart's lien, the Court believes that the exercise in which it is engaging is more akin to recognizing a previously existing intent to create a lien than in imposing a lien where one did not previously exist. Here, the Court recognizes that, by granting Wal–Mart a right to reimbursement of proceeds that in had previously paid out, the parties intended for Wal–Mart to have a lien in those proceeds. In that respect, Wal–Mart's lien does not arise by judgment or by any other means in which a judgment lien arises under 11 U.S.C. § 101(32). Wal–Mart's equitable lien therefore would not be avoidable under Section 522(f) as a judicial lien.

■ Pursuant to Section 522(c) of the Bankruptcy Code, property exempt under Section 522(d) is not liable during or after the case for any debt of the debtor that arose before the commencement of the case, except, among other exceptions, a debt secured by a lien not avoided under subsection 522(f) or 522(g). *See* 11 U.S.C. § 522(c) (1994). As noted, *supra*, the lien is secured by its nature and is not avoidable pursuant to Section 522(f). As Section 522(g) deals with property recovered by the trustee, it is inapplicable. Thus, by the terms of Section 522(c), Carpenter is liable for the equitable lien even though the proceeds of her recovery are otherwise exempt.

■ Likewise, Wal–Mart may proceed to recover against Carpenter. Pursuant to 11 U.S.C. § 362(c), a creditor is not precluded from recovering by the automatic stay after property is no longer considered property of the estate. By exempting property, the debtor effectively removes the property from the estate. *See* 11 U.S.C. § 522(b). Although the exempt property is no longer property of the estate, the court still retains jurisdiction over the property and thus the court may

still adjudicate whether the debtor must repay Wal–Mart. *See Abramowitz v. Palmer*, 999 F.2d 1274, 1277 (8th Cir.1993) (stating that fact debtor's home was exempt did not deprive the court of jurisdiction pursuant to 28 U.S.C. § 1334). The purpose of granting Wal–Mart an equitable lien is to enable a monetary recovery to which the lienholder is entitled. *See Department of the Army*, 525 U.S. 255, 119 S.Ct. at 691. The Court has recognized Wal–Mart's security interest in the debtor's settlement proceeds and has determined that nothing prevents Wal–Mart from foreclosing on that interest.

Carpenter has stipulated that she has received $125,000 in settlement proceeds from the third-party tortfeasor. At trial, Carpenter testified that approximately $42,000 of those proceeds went to attorneys' fees and that the remainder was placed in a bank account pending resolution of this suit. The parties have also stipulated that Wal–Mart has paid $106,-935.11 in health benefits on behalf of the debtor.

 As it relates to Carpenter, Wal–Mart's equitable lien necessarily attaches only to the portion of the proceeds that the debtor has retained after paying the attorneys' fees; as a result, Carpenter is only required to pay to Wal–Mart the settlement proceeds that remain under her control. Therefore, the Court enters judgment in favor of Wal–Mart for the amount of the proceeds that Carpenter has retained from the settlement, plus any interest accrued on those proceeds earned from the bank account in which the debtor placed the proceeds. This amount shall not exceed $106,935.11, the amount that Wal–Mart has paid in health benefits on the debtor's behalf. Carpenter's payment of the retained settlement proceeds, plus interest, shall satisfy the judgment and, upon such payment, Wal–Mart's equitable lien against Carpenter shall be extinguished.[5]

### Conclusion

Wherefore, this Court DECLARES that Wal–Mart has an equitable lien in the proceeds of the debtor's recovery from her personal injury lawsuit and ORDERS the debtor to pay to Wal–Mart the amount of the proceeds that the debtor has retained from the settlement with the third-party tortfeasor, plus accrued interest, in order to satisfy this lien.

IT IS SO ORDERED.

---

5. The Court declines to reach the issue of whether Wal–Mart may seek additional recovery from third-parties to fully satisfy its lien as neither party has joined any third parties in this suit.